**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| NAFEESA SYEED, | : | |
| | : | |
| | : | Case No. 24-cv-6101 (GHW) (GWG) |
| Plaintiff, | : | |
| | : | **ECF CASE** |
| v. | : | |
| | : | |
| BLOOMBERG L.P., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BLOOMBERG L.P.'S**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

    A.  Plaintiff's Employment With BLP. ............................................................................. 3

    B.  Plaintiff's Performance As A Reporter Was Adequate, But There Were Important Areas In Need Of Improvement. ................................................................................... 4

    C.  Plaintiff's Managers Were Supportive Of Her Throughout Her Employment With BLP. ........................................................................................................................ 5

    D.  BLP Eliminates The U.N. Reporter Position And Reassigns Some Of Its Responsibilities To Another Reporter. ......................................................................... 6

    E.  Plaintiff Voluntarily Resigns Her Employment With BLP On June 8, 2018. ................... 9

    F.  For Several Years Following Her Voluntary Resignation, Plaintiff Made No Meaningful Efforts To Seek Comparable Employment. ................................................ 9

ARGUMENT .................................................................................................................... 10

I.  SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF CANNOT ESTABLISH HER FAILURE-TO-PROMOTE CLAIMS UNDER THE NYSHRL AND THE NYCHRL. ............................................................................... 10

    A.  Plaintiff's Discrimination Claim Under The NYSHRL Fails Because She Cannot Establish That She Was Denied A U.N. Reporter Role Because Of Her Race Or Sex. .... 11

        1.  Plaintiff Cannot Establish A Prima Facie Case Of Discrimination. .......................... 12

            a.  The U.N. Reporter Position Was Eliminated And Plaintiff Therefore Did Not Apply For An Open U.N. Position. ......................................................... 13

            b.  There Is No Evidence To Establish Any Inference Of Discrimination With Respect To The Elimination Of The U.N. Reporter Position Or In Placing Wainer In A Reporter Position In New York. ................................................. 14

        2.  BLP Had Legitimate, Non-Discriminatory Reasons For Its Decisions And Plaintiff Cannot Establish That Those Reasons Were Pretextual. .............................. 17

    B.  Plaintiff's Failure-To-Promote Claim Similarly Fails Under The NYCHRL. ................. 20

II.  PLAINTIFF IS PRECLUDED FROM RECOVERING POST-RESIGNATION BACK AND/OR FRONT PAY AS A MATTER OF LAW BECAUSE SHE VOLUNTARILY RESIGNED HER EMPLOYMENT WITH BLP AND FAILED TO MITIGATE HER ALLEGED DAMAGES. ................................................................................................ 22

    A.  Plaintiff Is Not Entitled To Back Pay And Front Pay Because She Voluntarily Resigned Her Employment With BLP. ........................................................................ 22

    B.  Plaintiff Further Failed To Mitigate Damages By Not Pursuing Comparable Employment. ............................................................................................................. 27

CONCLUSION .................................................................................................................. 28

ii

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham v. N.Y.C. Dep't of Educ.*,
398 F. App'x 633 (2d Cir. 2010) ...........................................................................19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................................................11

*Anderson v. New York City Health and Hospitals Corp.*,
No. 16-cv-1051, 2020 WL 2866960 (S.D.N.Y. Mar. 2, 2020), *report and*
*recommendation adopted*, 2020 WL 1528101 (S.D.N.Y. Mar. 31, 2020) ...................... passim

*Azkour v. Little Rest Twelve*,
No. 10-cv-4132, 2014 WL 12779560 (S.D.N.Y. Mar. 26, 2014)...........................23

*Belanger v. New York Univ.*,
No. 21-cv-01644, 2025 WL 963308 (S.D.N.Y. Mar. 31, 2025)........................20, 21

*Borzon v. Green*,
778 F. App'x 16 (2d Cir. 2019) ............................................................................18

*Brady v. Wal-Mart Stores, Inc.*,
No. 03-cv-3843, 2005 WL 1521407 (E.D.N.Y. June 21, 2005)............................23

*Brown v. Eli Lilly & Co.*,
654 F.3d 347 (2d Cir. 2011)..................................................................................11

*Cardwell v. Davis Polk & Wardwell LLP*,
No. 19-cv-10256, 2023 WL 2049800 (S.D.N.Y. Feb. 16, 2023) (Woods, J.).............22, 27, 28

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................10

*Clark v. Marsh*,
665 F.2d 1168 (D.C. Cir. 1981).............................................................................23

*Davis-Bell v. Columbia Univ.*,
851 F. Supp. 2d 650 (S.D.N.Y. 2012)....................................................................21

*Dennis v. Columbia Colleton Med. Ctr.*,
290 F.3d 639 (2002)..............................................................................................23

*Dymskaya v. Orem's Diner of Wilton, Inc.*,
No. 12-cv-00388, 2015 WL 1038394 (D. Conn. Mar. 10, 2015) .........................23

*EEOC v. Bloomberg L.P.*,
   29 F. Supp. 3d 334 (S.D.N.Y. 2014)................................................................24

*Farzan v. Wells Fargo Bank, N.A.*,
   No. 12-cv-1217, 2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013)..............................21

*Fleming v. MaxMara USA, Inc.*,
   371 F. App'x 115 (2d Cir. 2010) ......................................................................12

*Garrison v. American Sugar Refining, Inc*,
   789 F. Supp. 3d 291, 307-308 (S.D.N.Y. 2025) ...............................................13, 14

*Gittens-Bridges v. City of New York*,
   No. 19-cv-272, 2022 WL 954462 (S.D.N.Y. Mar. 30, 2022)...................................11

*Greenway v. Buffalo Hilton Hotel*,
   143 F.3d 47 (2d Cir. 1998).................................................................................27

*Gupta v. New York City Sch. Const. Auth.*,
   305 F. App'x 687 (2d Cir. 2008) .......................................................................19

*Hare v. Potter*,
   220 F. App'x 120 (3d Cir. 2007) .......................................................................23

*Harrison v. U.S. Postal Serv.*,
   No. 06-cv-13131, 2010 WL 3291804 (S.D.N.Y. Aug. 10, 2010).............................23

*Hernandez v. Off. of Comm'r of Baseball*,
   No. 18-cv-9035, 2021 WL 1226499 (S.D.N.Y. Mar. 31, 2021)..............................12

*Hunt v. Consol. Edison Co. of New York, Inc.*,
   No. 18-cv-7262, 2021 WL 3492716 (E.D.N.Y. Aug. 9, 2021) ..............................21

*Jones-Cruz v. Rivera*,
   No. 19-cv-6910, 2022 WL 20437017 (S.D.N.Y. Oct. 28, 2022)............................11

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)..........................................................................................11

*Melton v. Poughkeepsie City Sch. Dist.*,
   No. 16-cv-9701, 2019 WL 4640234 (S.D.N.Y. Sept. 24, 2019) .............................11

*Mestecky v. New York City Dep't of Educ.*,
   No. 13-cv-4302, 2018 WL 10509457 (E.D.N.Y. Mar. 30, 2018)............................17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)...........................................................................20, 28

iv

*Nobler v. Beth Israel Med. Ctr.*,
  715 F. Supp. 570 (S.D.N.Y. 1989)...................................................................................24, 26

*Olaechea v. City of New York*,
  No. 17-cv-4797, 2022 WL 3211424 (S.D.N.Y. Aug. 9, 2022)................................................23

*Patel v. City of New York*,
  No. 12-cv-6312, 2016 WL 6820943 (S.D.N.Y. Sept. 29, 2016) .................................18, 19, 21

*Petrosino v. Bell Atl.*,
  385 F.3d 210 (2d Cir. 2004).............................................................................................13, 14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000).................................................................................................................12

*Reilly v. Cisneros*,
  835 F. Supp. 96 (W.D.N.Y. 1993) .........................................................................................27

*Richardson v. Nat'l Basketball Ass'n*,
  No. 23-cv-6926, 2025 WL 240202614 (S.D.N.Y. Aug. 18, 2025).........................................28

*Singh v. New York City Off-Track Betting Corp.*,
  No. 03-cv-5238, 2005 WL 1354038 (S.D.N.Y. June 8, 2005) ...............................................15

*Smalls v. New York Hosp. Med. Ctr. of Queens*,
  No. 13-cv-1257, 2015 WL 5437575 (E.D.N.Y. Sept. 15, 2015) ............................................23

*Spencer v. Wal-Mart Stores, Inc.*,
  469 F.3d 311 (3d Cir. 2006)....................................................................................................23

*Todaro v. Siegel Fenchel & Peddy, P.C.*,
  No. 04-cv-2939, 2008 WL 11446818 (E.D.N.Y. Aug. 11, 2008) ..........................................23

*Townsend v. Exchange Ins. Co.*,
  196 F. Supp. 2d 300 (W.D.N.Y. Feb. 9, 2002) ................................................................24, 26

*Tse v. UBS Fin. Servs., Inc.*,
  568 F. Supp. 2d 274 (S.D.N.Y. 2008)........................................................................22, 23, 24

*Tulino v. Ali*,
  No. 15-cv-7106, 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019) .............................................24

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000).......................................................................................................12

*Wheeler v. Praxair*,
  694 F. Supp. 3d 432 (S.D.N.Y. 2023)..........................................................................14, 15, 16

v

*Xiang v. Eagle Enters., LLC,*
 No. 19-cv-1752, 2022 WL 785055 (S.D.N.Y. Mar. 15, 2022)................................21

**STATUTES**

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.* ................................1, 4

Title VII of the Civil Rights Act of 1964.............................................................................11, 20, 21

New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ...........................................11

**OTHER AUTHORITIES**

ASPEN SECURITY FORUM, https://www.aspensecurityforum.org/about-us/ (last
 visited Mar. 20, 2026)..............................................................................................5

Fed. R. Civ. P. 56.......................................................................................................20

Fed. R. Civ. P. 56(a) ..................................................................................................10

Defendant Bloomberg L.P. ("BLP" or "Defendant") submits this memorandum of law in support of its motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff Nafeesa Syeed's ("Plaintiff") Amended Complaint ("Complaint") (Dkt. 4) in its entirety and with prejudice.

## PRELIMINARY STATEMENT

Plaintiff Nafeesa Syeed, a South-Asian American woman and a former BLP Reporter who voluntarily resigned in June 2018, asserts claims of race and sex discrimination under the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively). Plaintiff's claims are extremely narrow. They arise from a single position she alleges she expressed interest in during March 2018, which she characterizes as the United Nations ("U.N.") Reporter position, which she believes would have constituted a "promotion," and which she alleges was given to a male employee, David Wainer. Plaintiff's failure-to-promote claim fails under both the NYSHRL and NYCHRL for several reasons.

First, Plaintiff cannot establish a *prima facie* case of discrimination. The U.N. Reporter position was eliminated after the incumbent employee departed BLP and therefore was not an open role for which Plaintiff could have applied. After eliminating the U.N. Reporter position, BLP reassigned certain of its duties to Wainer—a highly regarded journalist—by relocating him from Tel Aviv to New York and having him cover U.N. related matters, as needed, as part of a broader portfolio.

Plaintiff's *prima facie* case also fails because she cannot raise an inference of discrimination. There is no evidence – and Plaintiff points to none – that Wes Kosova, the Senior Executive Editor in BLP's Washington, D.C. bureau who made the decision to eliminate the U.N. Reporter position and reassign some of those duties to Wainer – or anyone else for that matter – considered Plaintiff's race or gender when making those decisions. In fact, the discussions to

eliminate the U.N. Reporter position and reassign some of those duties to Wainer occurred well-before Plaintiff ever expressed interest in the purported U.N. Reporter role.  Nor is there any evidence that these decisions were motivated by discriminatory intent.  To the contrary, the undisputed evidence shows that Plaintiff's managers supported her throughout her tenure and even encouraged her to reconsider her resignation.  Even under the more lenient NYCHRL standard, Plaintiff's claims cannot survive summary judgment on these undisputed facts.

Second, regardless of whether the U.N. Reporter position was eliminated and the duties redistributed to Wainer or, as Plaintiff argues, a new reporter position was created for Wainer to cover the U.N. and foreign policy, for which she believes she should have been considered, her claims still fail.  The undisputed evidence establishes legitimate, non-discriminatory reasons for BLP's decisions.  BLP determined that the U.N. no longer generated significant finance-related news sufficient to justify a dedicated full-time reporter and reassigned some of those responsibilities to Wainer when he transferred to New York with the goal of increasing BLP's U.S. and international coverage.  Moreover, the undisputed evidence shows that Wainer was highly qualified for that role.  The case law is clear that Plaintiff's subjective belief that she was more qualified than Wainer is insufficient to establish pretext, nor is it sufficient to show that she was treated "less well" under the NYCHRL.

Finally, even if Plaintiff were to survive summary judgment, she cannot recover back pay or front pay damages, and her claims for such relief should be dismissed.  It is undisputed that Plaintiff voluntarily resigned from BLP in June 2018 and she has repeatedly confirmed that she is not asserting a constructive discharge claim.  Absent such a claim, her resignation bars recovery of post-resignation back pay and front pay damages as a matter of law.  Alternatively, even if her resignation did not constitute an automatic bar, and she were required to mitigate her alleged

2

damages by continuing to work for BLP absent a showing that she was denied a "unique" position or "faced a permanent obstacle to career advancement," she still could not meet that burden. Nor did she make reasonable efforts to obtain comparable employment after resigning. Accordingly, Plaintiff's voluntary resignation and failure to mitigate precludes recovery of post-resignation back pay and front pay damages as a matter of law.

### STATEMENT OF FACTS[1]

BLP is a global financial, software, data and media company. BLP provides a wide range of products and services to individuals, business, and institutions, including financial software tools, enterprise applications and order management systems for the institutional marketplace, as well as financial news to companies, organizations, and individuals, a global television network, website, radio stations and magazines.

With respect to financial news, a key aspect is ensuring the reporting of market-moving news in real time, which corporations and individuals can utilize to make quick financial decisions.

### A. Plaintiff's Employment With BLP.

Plaintiff began working for BLP as a Reporter in its Dubai news bureau on October 19, 2014. (SF ¶ 1.) In or about April 2016, Plaintiff transferred to BLP's Washington, D.C. bureau after she expressed interest in relocating from Dubai to the U.S. (SF ¶ 2.) In the D.C. bureau, Plaintiff worked on the National Security Team and covered technology, national security, and foreign policy, with an emphasis on cybersecurity. (SF ¶ 3.)

From April 2016 through June 8, 2018 – when Plaintiff voluntarily resigned her employment with BLP (SF ¶ 4) – Plaintiff reported to Bill Faries, then the Team Leader of the

---

[1] The references to "SF" are to Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 filed by Defendant.

National Security Team in the Washington, D.C. bureau. (*Id*.) Faries, in turn, reported to Mike Shepard, then-Managing Editor. (SF ¶ 5.) Shepard reported to Craig Gordon, who was a Managing Editor in the D.C. bureau until his promotion to Executive Editor and Bureau Chief of the D.C. bureau in 2017. (SF ¶ 6.) At all times relevant to this motion, Gordon reported to Wes Kosova, who was then Senior Executive Editor overseeing Bloomberg's U.S. and international government news teams. (SF ¶ 7.)

**B. Plaintiff's Performance As A Reporter Was Adequate, But There Were Important Areas In Need Of Improvement.**

Throughout Plaintiff's tenure in BLP's D.C. bureau, while her performance was adequate, there were concerns regarding certain aspects of her performance. (SF ¶¶ 8-9, 11-15, 17, 28-30.) These were reflected in her written performance reviews and also shared with her orally by her direct manager, Faries, during her tenure in the D.C. bureau. (*Id*.) As noted in her 2016 Year-End Performance Evaluation, those concerns included the need for Plaintiff to break more "scoops" in the cybersecurity and intelligence arena. (SF ¶ 9.) In her 2017 Interim Performance Evaluation, Plaintiff's manager explained that they would work with her to "tap her sourcing network into more frequent and exclusive stories" that would bring her "hard, behind the scenes work, [and] greater exposure," as they wanted her to serve as a lead writer on stories, rather than as an assist or second byline. (SF ¶ 12.) In the 2017 Year-End Performance Review – the last review Plaintiff received prior to her resignation – it was again noted that Plaintiff needed to be more aggressive in pitching stories and needed to increase her count of exclusive and day-to-day stories relative to her peers. (SF ¶ 14.)

Additionally, Plaintiff's initial drafts of articles were too long and not filed as quickly as her managers wanted. (SF ¶ 15.) Approximately two months prior to Plaintiff's resignation, Gordon expressed concerns to Faries regarding Plaintiff's "speed-to-market" with stories, noting

that they were taking longer than they should and that her productivity was not up to his standards. (SF ¶¶ 28-30.)  Gordon further explained that he was "beginning to have significant doubts about whether [Plaintiff's] metabolism[2] and, frankly, quality is up to [BLP's] standards," and that while Plaintiff's managers had a "soft spot" for her, whether her employment should continue "was an open question."  (SF ¶ 29.)

### C. Plaintiff's Managers Were Supportive Of Her Throughout Her Employment With BLP.

Notwithstanding the concerns surrounding Plaintiff's performance, Plaintiff's managers consistently encouraged and supported Plaintiff to maximize her potential, as reflected in her performance evaluations.  For example, in Plaintiff's 2016 Year-End Performance Evaluation, it was noted that "[Plaintiff's] achievements . . . made her the go-to person on our team and our confidence in her is reflected in the improvement in her ratings across the board from the mid-year evaluation."  (SF ¶ 10.)  Further, her 2017 Year-End Performance Evaluation stated that BLP's "editors believe[d] that even with her successes to date, [Plaintiff] has considerable under-utilized potential to be an even better journalist."  (SF ¶ 16.)

Plaintiff was also given several opportunities to help strengthen her reporting and develop her network of sources.  In 2016 and 2017, she was invited to the Aspen Security Forum, where she could network with leaders in the national security and foreign policy world.[3]  (SF ¶ 18.)  And in February 2018, Gordon invited her to attend a meeting at the Pakistani embassy.  (SF ¶ 19.)

Plaintiff's managers supported Plaintiff and approved her request to participate in a three-week journalism fellowship in Jordan through Columbia University, despite the fact that the stories

---

[2] Gordon testified that the word "metabolism" referred to the speed at which reporters wrote their stories (Bloom Decl., Ex. E, Gordon Tr. at 80:23-82:22); it was another way of saying "the stories need to be done faster."  (*Id*., Gordon Tr. at 222:7-223:7.)

[3] *See About Us*, ASPEN SECURITY FORUM, https://www.aspensecurityforum.org/about-us/ (last visited Mar. 20, 2026).

5

she produced during her fellowship focused on the conflict in Yemen, rather than on financial news and, thus, was not a topic of priority for BLP at that time.  (SF ¶¶ 20-27.)  Significantly, Plaintiff applied for the fellowship before discussing it with her managers, even though it would take her away from her BLP reporting responsibilities for several weeks while continuing to be paid—a privilege that was typically reserved only for "star reporters."  (SF ¶ 24.)  Notwithstanding their concerns about her performance at that point, Faries and Shepard went out of their way to advocate for Plaintiff's participation in the program because they hoped it would reignite Plaintiff's interest in her work and "jump start an improvement in her performance."  (SF ¶¶ 22, 25.)  Plaintiff continued to be paid her full BLP salary during her participation in this fellowship. (SF ¶ 23.)

Plaintiff also received steady compensation increases each year that she worked in the D.C. bureau.  (SF ¶¶ 31-33.)

### D. BLP Eliminates The U.N. Reporter Position And Reassigns Some Of Its Responsibilities To Another Reporter.

On March 16, 2018, Kambiz Foroohar, BLP's long-time U.N. Reporter, left his employment with BLP.  (SF ¶ 34.)

However, as early as January 2018, discussions began regarding the U.N. Reporter role and what would happen if Foroohar vacated that role.  Particularly, on January 10, 2018, more than two months prior to Foroohar's departure, Rosalind Mathieson, an Executive Editor based in Singapore, emailed Faries to inquire about the future of the U.N. Reporter role and Foroohar's employment with BLP.  (SF ¶¶ 35-37.)  In that email, Mathieson expressed a desire to transfer Wainer to the United States "to take a job like the U.N. gig" in order to gain international experience.  (SF ¶ 37.)

6

In connection with Foroohar's departure on March 16, 2018, Kosova evaluated BLP's editorial needs and determined that there was no longer a need for a full-time U.N. reporter since the U.N. no longer regularly generated stories that resonated with BLP's core readers (*i.e.*, stories focused on foreign policy through a financial perspective or lens.)  (SF ¶ 38.)  Kosova believed that placing any reporter in a U.N.-specific position would not be beneficial to either BLP or the reporter as the U.N. simply did not generate enough significant finance-related stories on a regular basis to keep such a reporter sufficiently busy.  (SF ¶¶ 38-39.)  Based on BLP's editorial priorities and business needs, Kosova further determined that there was instead a significant need for a reporter in New York focused on foreign policy with the ability to cover both domestic and international developments from a global perspective.  (SF ¶ 40.)  Reporting on the U.N. itself would be one component of this reporter's job when significant news of interest to our audience arose there, but day-to-day coverage of U.N. activities would not be this reporter's task.  (SF ¶ 41.)  Instead, the U.N. would primarily serve as a "listening post" for the reporter to identify and inform foreign policy and national security news outside of the U.N.  (SF ¶ 42.)  Thus, rather than filling the U.N. Reporter role vacated by Foroohar, Kosova made the decision to eliminate the dedicated U.N. Reporter position entirely.  (SF ¶¶ 44, 50-54, 56.)

Moreover, Kosova decided to use the "headcount" associated with Foroohar to instead transfer Wainer, a Reporter in BLP's Tel Aviv bureau, to the New York bureau to report on a range of topics, including foreign policy, U.S. and international stories, and, as needed, the U.N.  (SF ¶ 45.)  Wainer had been employed with BLP as a Reporter since July 2009 (SF 46) and was interested in relocating to the United States for personal reasons, and to gain international experience (SF ¶ 47).  Kosova, like Mathieson, believed Wainer had high potential, and retaining Wainer was important to him.  (SF ¶¶ 37, 48.)  Kosova believed based on Wainer's experience in the Tel Aviv

7

bureau, as well as the quality of his reporting and ability to break news stories, that Wainer was well-qualified to work as a reporter in the New York bureau, covering the types of domestic and international foreign policy stories – that Kosova wanted the person in that role to focus on.  (SF ¶ 49.)  Kosova made clear that while Wainer would use the U.N. as a "listening post," he would not be a dedicated U.N. Reporter, as that role had been eliminated.  (SF ¶ 51.)

Kosova believed that Wainer's move to New York, as well as other personnel decisions occurring simultaneously, would "fill big holes in [BLP's] US/international coverage" and would allow it to produce news stories that "travel well across time zones" and "to write more [government] stories from a global perspective to showcase [BLP's] reach and expertise."  (SF ¶¶ 52-53.)  Significantly, Faries, Shepard, and Gordon did not make the decision to eliminate the U.N. Reporter role, or to transfer Wainer to the New York bureau and reassign some U.N. reporting duties to him, as those decisions were made by Kosova.  (SF ¶¶ 55-56.)

In late January or early February 2018, Plaintiff told Faries that she was interested in relocating to New York to be closer to her husband's job in Philadelphia, and focusing her reporting on foreign policy.[4]  (SF ¶ 59.)  In or around March 2018, only after learning of Foroohar's departure, Plaintiff alleges that she "expressed [her] interest" to Faries in filling the U.N. Reporter role, should it become available.  (SF ¶ 60.)  Plaintiff never spoke to Kosova about her interest in the U.N. Reporter role.  (SF ¶ 61.)  According to Plaintiff, in or around late May or early June 2018, she learned of the decision to transfer Wainer to New York and took issue with the fact that she was not considered for his new beat.  (SF ¶ 63.)[5]

---

[4] As noted above, Plaintiff's role as a Reporter in the D.C. bureau included reporting on foreign policy.  (SF ¶ 3.)

[5] On or about October 9, 2018, Wainer transferred from the Tel Aviv bureau to the New York bureau and joined the National Security Team.  (SF ¶ 58.)  Wainer did not fill a dedicated U.N. Reporter position when he transferred to New York, as that position had been eliminated.  (SF ¶ 57.)

**E.  Plaintiff Voluntarily Resigns Her Employment With BLP On June 8, 2018.**

On June 5, 2018, at Plaintiff's request, Plaintiff met with Shepard to discuss her employment with BLP, including her thoughts about Wainer's transfer.  (SF ¶ 64.)  During the meeting, Shepard asked Plaintiff about her career ambitions (SF ¶ 65), and told her that he "would move heaven and [e]arth to help her get a job in New York," noting that he had done so previously for a former intern.  (SF ¶ 67.)  In an email Plaintiff sent after that meeting, Plaintiff expressed: "[i]n case it wasn't clear from our conversation," that she was "currently interested in covering foreign policy."  (SF ¶ 68; *see also* SF ¶ 66.)  In response, Shepard told Plaintiff that he was "so glad we had the chance to talk at length today" and "hope we can continue the conversation over the coming months."  (SF ¶ 69.)

Only three days later, on June 8, 2018, Plaintiff voluntarily resigned her employment with BLP.  (SF ¶ 70.)  Plaintiff first met with Faries, and then Shepard, informing them each of her resignation.  (SF ¶ 71.)  Shepard was surprised by Plaintiff's resignation (SF ¶ 72), especially in light of the positive discussion that he and Plaintiff had just days earlier.  Thereafter, Plaintiff spoke with Tamika Alexander (Human Resources Business Partner for the D.C. bureau), who told Plaintiff that she had been speaking with Gordon about finding Plaintiff an opportunity in New York.  (SF ¶ 73.)  Kosova then called Plaintiff and encouraged her to reconsider her resignation, asking if there was "anything [BLP] c[ould] do" to get her to stay.  (SF ¶ 74.)  Plaintiff told him it was "too late," and her employment with BLP ended voluntarily on June 8, 2018.  (SF ¶¶ 70, 75.)

**F.  For Several Years Following Her Voluntary Resignation, Plaintiff Made No Meaningful Efforts To Seek Comparable Employment.**

Following her voluntary resignation, Plaintiff chose not to earn any income for nearly three years and made no meaningful efforts to find work as a paid journalist.  Rather, she traveled to India for nearly a month to work on her novel (SF ¶ 80) and then accepted a series of unpaid

9

academic research positions where she continued to work on her novel (SF ¶¶ 81-87).  Plaintiff also performed some freelance work for BLP, writing two articles for Bloomberg Business week in the summer of 2018.  (SF ¶¶ 77-78.)  She declined the opportunity to continue performing freelance work for BLP.  (SF ¶ 79.)

Plaintiff's first application for paid work was not until March 5, 2019 – nearly one year after her resignation – when she applied for a Deputy Editor position at WeWork.  (SF ¶ 88.)  She then waited another year-and-a-half before submitting two other job applications for positions at the Los Angeles Times on September 1, 2020 and October 26, 2020.  (SF ¶¶ 89-90).  Plaintiff did not begin applying to other paid positions with any regularity until March 2021.  (SF ¶¶ 92-96.)  Plaintiff secured comparable paid, full-time employment in October 2021, just over two months after she applied in August 2021, as an Assistant Op-Ed Editor at the Los Angeles Times, and she began this position in December 2021—about two-and-a-half years after she left BLP.  (SF ¶¶ 97-99.)

## **ARGUMENT**

I.     **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF CANNOT ESTABLISH HER FAILURE-TO-PROMOTE CLAIMS UNDER THE NYSHRL AND THE NYCHRL.**

Plaintiff's failure-to-promote claims based on alleged sex and race discrimination under the NYSHRL and NYCHRL arise from one position she alleges she expressed interest in during March 2018, which she characterizes as the "U.N. Reporter" position.  Both of these claims fail as matter of law.

Summary judgment is appropriate where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A plaintiff cannot defeat a defendant's well-supported summary judgment motion unless she proffers sufficient admissible evidence on which

10

a reasonable jury could rule in her favor with respect to each and every element of her claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.'" *Melton v. Poughkeepsie City Sch. Dist.*, No. 16-cv-9701, 2019 WL 4640234, at *6 (S.D.N.Y. Sept. 24, 2019) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Specifically, where, as here, "an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Gittens-Bridges v. City of New York*, No. 19-cv-272, 2022 WL 954462, at *12 (S.D.N.Y. Mar. 30, 2022) (citation omitted), *aff'd*, No. 22-810, 2023 WL 8825342, at *2 (2d Cir. Dec. 21, 2023).

As detailed herein, the undisputed facts warrant summary judgment in favor of BLP as to Plaintiff's failure-to-promote claims under the NYSHRL and NYCHRL.

**A. Plaintiff's Discrimination Claim Under The NYSHRL Fails Because She Cannot Establish That She Was Denied A U.N. Reporter Role Because Of Her Race Or Sex.**

Plaintiff's claim that she was not promoted to the purported U.N. Reporter position in 2018 under the NYSHRL is analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[6] In order to withstand summary judgment, a plaintiff must first establish a *prima facie* case, specifically she must show that: "(1) [she] is a member of a protected class, (2) [she] applied for and was qualified for the job in question, (3) [she] was denied the job, and (4) [she] was rejected under circumstances which give rise to an

---

[6] The NYSHRL, N.Y. Executive Law § 290 *et seq.*, was amended on October 11, 2019. Claims accruing prior to that date – like Plaintiff's failure-to-promote claim here – are analyzed under the pre-amendment NYSHRL standard, which mirrors that of Title VII of the Civil Rights Act of 1964. *See Jones-Cruz v. Rivera*, No. 19-cv-6910, 2022 WL 20437017, at *9 (S.D.N.Y. Oct. 28, 2022).

11

inference of unlawful discrimination." *Hernandez v. Off. of Comm'r of Baseball*, No. 18-cv-9035, 2021 WL 1226499, at *4 (S.D.N.Y. Mar. 31, 2021), *aff'd*, No. 22-343, 2023 WL 5217876 (2d Cir. Aug. 15, 2023).  If the plaintiff establishes her *prima facie* case, the burden shifts to the employer to "offer[] a legitimate non-discriminatory rationale for its actions."  *Id*. (internal quotations and citations omitted).  If it does so, the plaintiff must "demonstrate that the employer's proffered explanation was 'unworthy of credence' and in fact a 'pretext for discrimination.'"  *Id*. (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).  A plaintiff cannot survive summary judgment unless she presents "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted).  "Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual."  *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010).  Significantly, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Hernandez*, 2021 WL 1226499, at *4.

As detailed herein, summary judgment should be granted as to Plaintiff's failure-to-promote claim under the NYSHRL because Plaintiff cannot establish a *prima facie* case of discrimination, nor can she rebut with any competent evidence BLP's legitimate reasons for assigning U.N. reporting duties to Wainer after eliminating the U.N. Reporter position.

### 1.  *Plaintiff Cannot Establish A Prima Facie Case Of Discrimination.*

Plaintiff's *prima facie* case fails as a matter of law because the undisputed evidence shows that the U.N. Reporter position was eliminated and no longer existed, and, in any event, there is no evidence to support any inference of alleged discrimination.

> a. The U.N. Reporter Position Was Eliminated And Plaintiff Therefore Did Not Apply For An Open U.N. Position.

Where there was no vacant position, a failure to promote claim cannot lie as a matter of law. *Petrosino v. Bell Atl.*, 385 F.3d 210, 226-27 (2d Cir. 2004) (to satisfy the second element of the *prima facie* case, a plaintiff must show that a "specific application" for an open position was made). Here, the record is clear that there was never a vacant U.N. Reporter position. (SF ¶¶ 34-58.) It is undisputed that after Foroohar left BLP in March 2018, the U.N. Reporter position that he previously held was eliminated. (SF ¶¶ 34, 38-44, 51.) Indeed, BLP never posted, filled, or created a new U.N. Reporter position. Rather, BLP reassigned reporting duties related to the U.N. to Wainer, who – in addition to covering U.N. matters as needed – also covered other topics, including "U.S.-international stories." (SF ¶¶ 45-51.) In communicating the decision to transfer Wainer to New York, Kosova – who was the decision-maker in eliminating Foroohar's position and reassigning some of his duties to Wainer – was explicit that Wainer would ***not*** be a "UN reporter." ((SF ¶ 51) ("[Wainer will] use the U.N. as a listening post, but he won't be a UN reporter.").)

Courts in this district dismiss failure-to-promote claims in analogous circumstances. *Garrison v. American Sugar Refining, Inc.* is instructive. In *Garrison*, the court granted summary judgment in favor of the defendant-employer as to the plaintiff's failure-to-promote claim, finding in pertinent part that the plaintiff had failed to establish a *prima facie* case of discrimination. 789 F. Supp. 3d 291, 307-308 (S.D.N.Y. 2025). In so holding, the court found that, after the employer had phased out the Senior Tech position on which the plaintiff's claim was based, it chose to staff its lab by hiring another technician and spreading the job duties of the Senior Tech position amongst lab technicians as appropriate. *Id*. at 308. Critical to the court's grant of summary judgment was that the employer never reopened the Senior Tech position, and therefore, "did not

13

commit the gravamen of a failure to promote claim" because "it never passed over plaintiff for a position that it then attempted to fill with other, equally qualified candidates." *Id*. (emphasis in original).

A similar outcome was reached in *Anderson v. New York City Health and Hospitals Corp.*, No. 16-cv-1051, 2020 WL 2866960 (S.D.N.Y. Mar. 2, 2020), *report and recommendation adopted*, 2020 WL 1528101 (S.D.N.Y. Mar. 31, 2020). There, the court granted summary judgment in favor of the employer on plaintiff's failure-to-promote claims under the NYSHRL, holding that the plaintiff had failed to establish a *prima facie* case of discrimination because he failed to establish that the alleged position – promotion to a PASA Supervisor – ever existed. *Id*. at *14. Moreover, the employer never sought to fill a PASA Supervisor position and, instead, delegated PASA Supervisor responsibilities to other existing supervisors. *Id*. In granting summary judgment, the court noted that "[i]t is well settled that where duties [are] delegated to others, and no applicants are sought, no failure to promote claim exists." *Id*.

Here, as in *Garrison* and *Anderson*, Plaintiff cannot establish a *prima facie* case because there was never a vacant U.N. Reporter position sought to be filled following Foroohar's departure and any U.N.-related duties were simply reassigned to Wainer.

> b. There Is No Evidence To Establish Any Inference Of Discrimination With Respect To The Elimination Of The U.N. Reporter Position Or In Placing Wainer In A Reporter Position In New York.

Nor can Plaintiff establish any inference of discrimination, which is also fatal to her *prima facie* case. To show an inference of discrimination, a plaintiff may rely on circumstances, including "the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [alleged adverse action].'" *Wheeler v. Praxair*, 694 F. Supp. 3d 432, 457 (S.D.N.Y. 2023). If there is no direct evidence of discrimination, "a plaintiff may rely on indirect or circumstantial evidence." *Id*.

14

There is no evidence that the elimination of the U.N. Reporter position was connected to Plaintiff (or anyone else for that matter). Rather, Kosova made the decision to eliminate the role because it was not generating the type of financial-related stories relevant to Bloomberg News. (SF ¶¶ 38-42, 44.) Furthermore, it is undisputed that Kosova's decision to transfer Wainer to New York to assume a reporter role there was made with several goals in mind (SF ¶¶ 34-58), including to retain Wainer (who wanted to relocate back to the U.S.) (SF ¶¶ 35-37, 47-48) and to fill holes that existed in BLP's US and international coverage. (SF ¶ 53.) There is no evidence that any of these motivations had anything to do with Plaintiff.

Additionally, the timing of the elimination of the U.N. Reporter position and the decision to transfer Wainer to New York further belies any inference of discrimination. Indeed, the undisputed evidence establishes that discussions concerning the U.N. Reporter role and actions to be taken if Foroohar (the incumbent in that role) departed BLP, began as early as January 2018 and continued through March 2018, before Plaintiff expressed any interest in the U.N. Reporter role in March 2018, sometime after learning of Foroohar's departure. (SF ¶¶ 35-38.) In light of these undisputed facts, Plaintiff cannot establish any inference of discrimination. *See Singh v. New York City Off-Track Betting Corp.*, No. 03-cv-5238, 2005 WL 1354038 (S.D.N.Y. June 8, 2005) (granting summary judgment in favor of the defendant and finding no inference of discrimination where the decision to promote two individuals was made before the plaintiff requested consideration for what he alleged was the same position).

Nor is there any evidence that the decision to eliminate the U.N. Reporter position and reassign some of those reporting duties related to the U.N. (with U.N. coverage on an as-needed basis only) to Wainer, in addition to other areas that he was asked to cover and report on, were motivated by race or gender. *Wheeler* compels dismissal of Plaintiff's NYSHRL claim. In

15

*Wheeler*, the court held that the plaintiff failed to "come forward with non-speculative evidence that [the company's] decision not to promote him was based on his [race]." 694 F. Supp. 3d at 457. In particular, the plaintiff did not "point to any writings or statements ***by the decisionmakers*** indicative of racial bias in hiring and promotions," and thus, failed to establish any inference of discrimination. *Id*. (emphasis supplied). Moreover, because the position the plaintiff sought was never filled and eventually eliminated, the court found that no inference of discrimination could be established based on the promotion of an individual outside the protected class. *Id*. at 458.

Like in *Wheeler*, BLP eliminated Foroohar's position and never filled it, instead reassigning some of the duties previously held by Foroohar associated with the U.N. to Wainer, who would mainly report on other areas, like U.S. and international news. (SF ¶¶ 38-42, 49, 51.) Noticeably absent from the record are any statements by Kosova indicative of sexism or racial bias. Plaintiff makes no allegations of any alleged discriminatory conduct by Kosova, and did not even discuss the U.N. Reporter position with him. (SF ¶¶ 61-62.) On these undisputed facts, Plaintiff has not and cannot establish any inference of discrimination and her *prima facie* case necessarily fails for this reason as well.[7]

Lastly, the undisputed evidence establishes that BLP supported Plaintiff throughout her tenure. For example, during Plaintiff's employment with BLP, her managers supported her application for the Columbia fellowship and other professional events (SF ¶¶ 18-27); while raising constructive feedback in Plaintiff's performance reviews, reviewers also emphasized their support

---

[7] Plaintiff alleges that when she asked Shepard about why she was purportedly not considered for the U.N. Reporter position, that Shepard replied that "we wanted to make the New York job a diversity slot, but it really didn't work out that way." (Bloom Decl., Ex. A, Syeed Tr. at 117:23-118:6.). Shepard denies making any such comment. (*Id*., Ex. D, Shepard Tr. at 174:14-175:15.) However, even assuming that the comment was made, it is irrelevant, as it is undisputed that Shepard was not involved in the decision to eliminate the U.N. Reporter position or to transfer Wainer to New York and reassign some U.N. reporting duties to him, in addition to other reporting responsibilities. (SF ¶¶ 55-56.)

of Plaintiff and a desire to help her succeed at BLP. (SF ¶¶ 12, 16.) Even after Plaintiff advised BLP that she was voluntarily resigning her employment, Plaintiff's managers and others encouraged her to reconsider her decision and represented to Plaintiff that they would try to assist her in finding a position in New York, as it was her stated desire to do so for personal reasons. (SF ¶¶ 73-75.) After her employment with BLP ended, Plaintiff performed some freelance services for Defendant, belying any discriminatory motivations; she could have continued to do so, but declined the opportunity. (SF ¶¶ 77-79.) On these undisputed facts, Plaintiff cannot establish any inference of discrimination. *See*, *e.g.*, *Mestecky v. New York City Dep't of Educ.*, No. 13-cv-4302, 2018 WL 10509457, at *9 (E.D.N.Y. Mar. 30, 2018) ("Accordingly, even if some of the facts [plaintiff] points to could arguably create an inference of discriminatory animus, evidence that [her supervisor] expressed hope in her potential, and repeatedly tried to convince her to stay, negates any potential discriminatory inference."), *aff'd*, 791 F. App'x 236 (2d Cir. 2019).

### 2. *BLP Had Legitimate, Non-Discriminatory Reasons For Its Decisions And Plaintiff Cannot Establish That Those Reasons Were Pretextual.*

Drawing all inferences in favor of Plaintiff, summary judgment still should be granted to Defendant regardless of whether the position Wainer assumed is characterized as the former U.N. Reporter job or a new reporter position because Defendant had legitimate, non-discriminatory reasons for eliminating the U.N. Reporter position and transferring Wainer to New York. Plaintiff cannot meet her burden of showing that those reasons were pretextual.

Plaintiff cannot dispute that the decision to eliminate Foroohar's position was made because there simply was no longer a need to have a reporter permanently based at the U.N. (SF ¶¶ 34-58.) Plaintiff also cannot dispute that transferring Wainer to New York as a reporter and having him focus on covering "U.S.-international" stories, not simply on the U.N., was necessary to "fill big holes in [BLP's] US/international coverage and [to] let [BLP] produce pieces that travel

17

well across time zones," as well achieving BLP's goal of "writ[ing] more [government] stories from a global perspective to showcase [BLP's] reach and expertise." (SF ¶¶ 51, 53.)  Documentary evidence – specifically, emails between Kosova, the decision-maker, and from Mathieson and Reto Gregori, Deputy Editor-in-Chief – confirm this legitimate and non-discriminatory rationale.  (SF ¶¶ 35-37, 54.)  Moreover, the undisputed evidence establishes that discussions regarding the elimination of the U.N. Reporter position and the transfer of some of the duties associated with that role to Wainer began in January 2018, well before Plaintiff expressed any interest in the purported position in March 2018, after Foroohar's departure.  (SF ¶¶ 34-38, 60-61.)  By contrast, there is no evidence in the record from which a factfinder could reasonably conclude that Kosova was motivated by discrimination, and Plaintiff's disagreement with BLP's evaluation of its business needs does not constitute pretext.  *See Borzon v. Green*, 778 F. App'x 16, 19 (2d Cir. 2019) (citation omitted) (noting the court does "not sit as a super-personnel department that reexamines an entity's business decisions").

Plaintiff argues that she was more qualified than Wainer for the role in New York based on her subjective belief that she had more journalism experience and a master's degree, which she contends is sufficient to establish pretext.  (Bloom Decl., Ex. A, Syeed Tr. at 96:7-97:6.)  It is axiomatic that a plaintiff's evidence that she is "more qualified" than the selected individual "must be concrete, not speculative" and "[a] plaintiff's subjective assessment of [her] qualifications is insufficient to create a genuine issue of fact as to whether an employer's proffered reason for selecting the successful candidate was a pretext for discrimination." *Anderson*, 2020 WL 2866960, at *13.  Rather, a plaintiff must establish that "[her] credentials are so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [the plaintiff] for the job in question." *Patel v. City*

18

*of New York*, No. 12-cv-6312, 2016 WL 6820943, at \*6-7 (S.D.N.Y. Sept. 29, 2016) (quoting *Abraham v. N.Y.C. Dep't of Educ.*, 398 F. App'x 633, 635 (2d Cir. 2010) (granting summary judgment on failure-to-promote claim where the defendants established that the selected individuals "possessed the academic, professional, and experiential qualifications required to perform their jobs"). Ultimately, to survive summary dismissal, a plaintiff must show that the decision was "infected by discriminatory animus, and was not just a bad or mistaken decision." *Anderson*, 2020 WL 2866960, at \*13. "The law does not protect employees from their employer's unwise decisions or mistakes; it is not the Court's role to second-guess an employer's business decisions, even if they are unwise or premised on a mistaken assessment of the job candidates' relative qualifications." *Id.*

The holding in *Patel* is instructive. In that case, the court granted summary judgment in favor of the defendant, explaining that "[w]here the employee selected for a position was 'eminently qualified,' the Court will grant summary judgment against a plaintiff claiming discriminatory failure to promote notwithstanding supported allegations that the selected employees were 'less academically qualified [and possessed] less professional experience' than the plaintiff." *Patel*, 2016 WL 6820943, at \*6 (quoting *Gupta v. New York City Sch. Const. Auth.*, 305 F. App'x 687, 689 (2d Cir. 2008)), *aff'd*, 699 F. App'x 67 (2d Cir. 2017). The same result should follow here, as Plaintiff's contentions that she had a master's degree and had been working longer than Wainer are legally insufficient to establish pretext.

Significantly, Kosova did not compare Wainer's qualifications to Plaintiff's, as he was not looking to fill any role. Rather, as detailed above, the U.N. Reporter position was eliminated and certain of Foroohar's reporting responsibilities related to the U.N. were reassigned to Wainer when he transferred to New York as a reporter. (SF ¶¶ 34-58.) Notwithstanding, the undisputed facts

19

establish that Wainer was qualified.  It is undisputed that at the time Plaintiff allegedly expressed interest in the U.N. Reporter role, Wainer had five more years of experience reporting for BLP than she did.  (SF ¶¶ 1, 46.)  Wainer was also considered by senior management to be a "high-potential" reporter whom the organization wanted to retain.  (SF ¶¶ 35-37, 48-49.)  By contrast, there were concerns regarding Plaintiff's performance, specifically her failure to generate story leads, the amount of time it took for her to complete her stories, and her ability to work unsupervised.  (SF ¶¶ 8-9, 11-12, 13-15, 17, 28-30.)  Thus, even though there was no open position, the undisputed facts nonetheless show that Wainer was, in fact, qualified and Plaintiff's subjective belief that she possessed greater qualifications are insufficient as a matter of law to establish pretext.[8]

### B.  Plaintiff's Failure-To-Promote Claim Similarly Fails Under The NYCHRL.

In addition to being analyzed under the burden-shifting framework applied to NYSHRL claims, discrimination claims under the NYCHRL – like Plaintiff's failure-to-promote claim here – must also be analyzed "separately and independently[.]" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also Anderson*, 2020 WL 2866960, at *13 (noting that courts in the Second Circuit "typically employ the same shifting burdens test used to analyze Title VII [and NYSHRL] failure to promote claims to evaluate NYCHRL failure to promote claims, while also keeping 'the NYCHRL's more liberal standards in mind'").  "'While claims under the NYCHRL are more liberally construed than claims under [the NYSHRL] . . . the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56.'"  *Belanger v. New York Univ.*, No. 21-cv-

---

[8] In deciding BLP's motion for summary judgment, the Court need not resolve any factual dispute as to who was more qualified.

01644, 2025 WL 963308, at *21 (S.D.N.Y. Mar. 31, 2025) (quoting *Xiang v. Eagle Enters., LLC*, No. 19-cv-1752, 2022 WL 785055, at *18 (S.D.N.Y. Mar. 15, 2022)).  To survive summary judgment, Plaintiff must establish that she was treated [] less well than other similarly situated employees, at least in part for discriminatory reasons" and must show "differential treatment that is more than trivial, insubstantial, or petty."[9]  *Id.* at *21.

Here, the undisputed facts make clear that Plaintiff cannot show that she was treated "less well" on account of her race or sex and her NYCHRL claim fails for the same reasons as her NYSHRL claim.  Indeed, even under the NYCHRL, a failure-to-promote claim necessarily fails where – as is the case here – no open position existed, no applicants were sought, and duties were simply reassigned to other employees.  *See Anderson*, 2020 WL 2866960, at *14 (granting summary judgment on failure-to-promote claim under the NYCHRL for these reasons).

Moreover, Plaintiff's subjective belief that she was more qualified than Wainer is equally insufficient to survive summary judgment under the NYCHRL, as the undisputed facts clearly establish that Wainer was qualified to assume some of the U.N. Reporter duties.  *See Patel*, 2016 WL 6820943, at *6-7 (granting summary judgment on failure-to-promote claim under the NYCHRL where the employer established – and the plaintiff failed to dispute – that the individuals selected "possessed the academic, professional, and experiential qualifications required to perform their jobs").

---

[9] The Second Circuit has not adopted a specific test for failure-to-promote claims under the NYCHRL.  *See Hunt v. Consol. Edison Co. of New York, Inc.*, No. 18-cv-7262, 2021 WL 3492716, at *6 (E.D.N.Y. Aug. 9, 2021); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 679 (S.D.N.Y. 2012) ("[C]ourts in this circuit have yet to adopt a test for analyzing failure to promote claims under the broader and more liberal NYCHRL.").  Absent a specific test for NYCHRL failure-to-promote claims, courts have "used the Title VII and NYSHRL standard as a guide, while keeping the NYCHRL's more liberal standards in mind."  *Farzan v. Wells Fargo Bank, N.A.*, No. 12-cv-1217, 2013 WL 6231615, at *22 (S.D.N.Y. Dec. 2, 2013) (cleaned up).

21

Accordingly, like her claim under the NYSHRL, summary judgment should be granted in favor of Defendant on Plaintiff's failure-to-promote claim under the NYCHRL.

**II.  PLAINTIFF IS PRECLUDED FROM RECOVERING POST-RESIGNATION BACK AND/OR FRONT PAY AS A MATTER OF LAW BECAUSE SHE VOLUNTARILY RESIGNED HER EMPLOYMENT WITH BLP AND FAILED TO MITIGATE HER ALLEGED DAMAGES.**

Under both the NYSHRL and NYCHRL, a plaintiff has a duty to mitigate damages. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256, 2023 WL 2049800, at *37 (S.D.N.Y. Feb. 16, 2023) (Woods, J.) (granting summary judgment on back pay and front pay claims where plaintiff failed to mitigate). As detailed herein, Plaintiff is not entitled to back pay and/or front pay because she voluntarily resigned from her employment with BLP and did not mitigate her damages by pursuing comparable paid employment following her voluntary resignation.

**A.  Plaintiff Is Not Entitled To Back Pay And Front Pay Because She Voluntarily Resigned Her Employment With BLP.**

There is no dispute that Plaintiff voluntarily resigned from her employment with BLP on June 8, 2018 (SF ¶ 70), and that she is not asserting a constructive discharge claim in this case (*see generally*, Amended Complaint at Dkt. 4.).

The "strong version" of the constructive discharge rule requires that "'in order for an employee to recover back pay [or front pay] for lost wages beyond the date of [her] employment, the evidence must establish that the employer constructively discharged the employee.'" *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 300 (S.D.N.Y. 2008) (cleaned up) (collecting cases from other circuits). Stated otherwise, if a plaintiff voluntarily resigns and does not assert a constructive discharge claim, he or she cannot, as a matter of law, recover back pay or front pay damages.

To date, the Second Circuit has not considered and, thus, has not expressly adopted "the strong version of the 'constructive discharge rule,'" which bars a plaintiff as a matter of law from

22

recovering post-resignation damages and represents the majority view among the circuits that have considered the issue.  Of the seven circuits that have done so, six – the Third, Fifth, Seventh, Eighth, Tenth, and District of Columbia Circuits – have adopted the "strong version" of the constructive discharge rule.  *Id*. (collecting cases); *see also Hare v. Potter*, 220 F. App'x 120, 135 n.9 (3d Cir. 2007); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006); *Clark v. Marsh*, 665 F.2d 1168, 1172 (D.C. Cir. 1981).[10]

Moreover, within the Second Circuit, several district courts have adopted or substantively applied the "strong version" of the constructive discharge rule.  *See Olaechea v. City of New York*, No. 17-cv-4797, 2022 WL 3211424, at *9 n.5 (S.D.N.Y. Aug. 9, 2022); *Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-cv-1257, 2015 WL 5437575, at *8 n. 15 (E.D.N.Y. Sept. 15, 2015); *Azkour v. Little Rest Twelve*, No. 10-cv-4132, 2014 WL 12779560, at *2-3 (S.D.N.Y. Mar. 26, 2014); *Harrison v. U.S. Postal Serv.*, No. 06-cv-13131, 2010 WL 3291804, at *9 n.9 (S.D.N.Y. Aug. 10, 2010), *aff'd*, 450 F. App'x 38 (2d Cir. 2011); *Todaro v. Siegel Fenchel & Peddy, P.C.*, No. 04-cv-2939, 2008 WL 11446818, at *6 (E.D.N.Y. Aug. 11, 2008); *Brady v. Wal-Mart Stores, Inc.*, No. 03-cv-3843, 2005 WL 1521407, at *5-6 (E.D.N.Y. June 21, 2005); *Dymskaya v. Orem's Diner of Wilton, Inc.*, No. 12-cv-00388, 2015 WL 1038394, at *9-10 (D. Conn. Mar. 10, 2015).

Here, this Court should apply the "strong version" of the constructive discharge rule and hold that Plaintiff's voluntarily resignation categorically precludes her back pay and front pay damages claims as a matter of law.

Even if this Court does not apply the "strong version" of the constructive rule, summary judgment should still be granted in favor of BLP as to Plaintiff's claims for back pay and front

---

[10] Only the Fourth Circuit has held that courts should evaluate whether the plaintiff had attempted to mitigate her damages in order to determine if she could recover back pay damages.  *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 651 (2002).

pay.  There are five cases within the Second Circuit that have not applied the "strong version" of the constructive discharge rule and, instead, applied a different test—that a plaintiff who voluntarily resigns her employment (and does not assert a constructive discharge claim) is excused from the requirement that she mitigate her purported damages by continuing to work for the defendant if she can meet one of the following narrow and limited exceptions: (1) she had been denied a "unique" position; or (2) she "faced a permanent obstacle to career advancement."  *See EEOC v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 341-45 (S.D.N.Y.  2014); *Tulino v. Ali*, No. 15-cv-7106, 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019), *aff'd sub nom. Tulino v. City of New York*, 813 F. App'x (2d Cir. 2020); *Tse v. UBS Fin. Serv., Inc.*, 568 F. Supp. 2d 274 (S.D.N.Y.  2008); *Nobler v. Beth Israel Med. Ctr.*, 715 F. Supp. 570 (S.D.N.Y. 1989); *Townsend v. Exchange Ins. Co.*, 196 F. Supp. 2d 300 (W.D.N.Y. Feb. 9, 2002).

The holdings in all five of those cases turn on whether the position at issue was the only option the plaintiff had for career advancement, or whether there were other similar positions to which the plaintiff might seek advancement over time.  In Bloomberg *L.P.*, *Tulino*, and *Tse*, there were such other positions.  By contrast, in *Nobler* and *Townsend* (the two cases where the court found the exceptions were met) there were not – there was only one position that the plaintiff could have sought and, when the plaintiff did not receive that position, there was no other equivalent alternative position at the employer.  *See Nobler*, 715 F. Supp. at 572 (involving only one Director of Radiology position, the highest position in the radiology department); *Townsend v. Exch. Ins. Co.*, 196 F. Supp. 2d 300, 310 (W.D.N.Y. 2002) (plaintiff applied for and did not receive either of the two available leadership positions for which there were three candidates).

Here, the undisputed facts establish Wainer's role as a reporter in New York was not unique and, significantly, his job title – Reporter – did not change upon his transfer.  (SF ¶¶ 57-58.)  It is

24

undisputed that Wainer's role was not limited to covering the U.N. and, in fact, he would only cover the U.N. on a limited and "as needed" basis. (SF ¶¶ 34-58.)  Nor was his role specialized in any way.  Rather, Wainer's coverage areas were broad and he was asked to report on a range of topics in the New York bureau, including foreign policy, U.S. and international stories.  (SF ¶¶ 40-42, 49, 51.)

The fact that Wainer's role in New York was not "unique" is further established by Plaintiff's admission that she was not singularly focused on the U.N. as the only topic on which she wanted to report.  (SF ¶¶ 65-66, 68.)  Rather, it is undisputed that her main objective was relocating to New York (SF ¶ 59); the purported U.N. position was simply a conduit for her to achieve that goal.  Further emphasizing this is Plaintiff's admission that she was interested in covering foreign policy and the Middle East (*id*.), both of which are broad subject areas that could conceivably fall under the purview of many different reporting roles.  This undermines any assertion that there was only one position that she was interested in or that it was unique in any way, as there presumably were many other reporter roles that could have suited her generalized coverage interests.  Faries, Plaintiff's direct manager, even explained that he "view[ed] every reporter on [his] team as a foreign policy reporter," (Bloom Decl., Ex. C, Faries Tr. at 180:12-16), further underscoring that "foreign policy" was not limited to a single role and fell within many reporters' beats.[11]

Nor can Plaintiff meet her burden of establishing that she faced permanent obstacles to career advancement had she not voluntarily resigned her employment with BLP.  It is undisputed that when Plaintiff informed her managers that she was resigning, several employees encouraged

---

[11] And Plaintiff's own expert, Dr. Debra Dwyer, conceded that she, too, did not consider Wainer's reporter position in New York to be unique.  (Bloom Decl., Ex. FF, Dwyer Tr. at 72:13-17.)

her to reconsider, including Kosova and Alexander. (SF ¶¶ 73-75.) Documentary evidence also confirms that Gordon was already working to find Plaintiff an opportunity in New York (SF ¶ 73), and just three days prior to Plaintiff's resignation, Shepard had offered to "move heaven and [e]arth to help" find her a position in New York, as it was her desire to relocate to New York for personal reasons. (SF ¶¶ 64-67.) Thus, the undisputed facts in this case are in stark contrast to those in *Nobler* and *Townsend*, where the positions the plaintiffs sought were their only remaining options at their employer for advancement.

Any purported "obstacles" are further undermined by the professional support Plaintiff received prior to her resignation. Throughout her tenure in the D.C. bureau, Plaintiff was offered opportunities to progress as a journalist, including invitations to the prestigious Aspen Security Forum (SF ¶ 18), where she could expand her network of sources in the national security world, and an invitation from the then-Managing Editor of the D.C. bureau to meet with Pakistani officials at their embassy. (SF ¶ 19.) Just days before her resignation, Shepard expressed to Plaintiff his desire to "continue the conversation" about her career interests over the coming months. (SF ¶¶ 68-69.) And despite concerns regarding Plaintiff's performance (SF ¶¶ 8-9, 11-15, 17, 28, 30), Plaintiff's managers were encouraging and supportive of her. (SF ¶¶ 10, 16, 18-27.) To that end, they sought and obtained approval for Plaintiff's participation in a three-week, paid journalism fellowship in Jordan, even though the fellowship focused on the conflict in Yemen—which, at the time, was not a priority to Bloomberg—and Plaintiff applied before consulting them despite knowing the fellowship required her to be away from her BLP responsibilities for several weeks. (SF ¶¶ 20-27.) Notwithstanding this "highly unusual" situation, Faries and Shepard went out of their way to advocate for her participation because they hoped it would reignite Plaintiff's interest

26

in her work.  (SF ¶¶ 22, 24-25.)  Lastly, it is undisputed that throughout her tenure in the D.C. bureau, Plaintiff received annual compensation increases.  (SF ¶¶ 31-33.)

Ultimately, on these undisputed facts, even if Plaintiff's claims survive this motion, summary judgment should be granted for BLP as to Plaintiff's claim for back and front pay damages.

### B. Plaintiff Further Failed To Mitigate Damages By Not Pursuing Comparable Employment.

Plaintiff's inability to recover lost back pay and front pay is compounded by the fact that, after she resigned from BLP, she made little, and legally insufficient, effort to seek comparable employment.

A plaintiff asserting a discrimination claim must mitigate her alleged damages.  *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53-54 (2d Cir. 1998); *Cardwell*, 2023 WL 2049800, at *37. The plaintiff must use reasonable diligence to find other suitable employment.  *Greenway*, 143 F.3d at 53-54.  A plaintiff who fails to adequately mitigate damages forfeits the right to back pay and front pay.  *Reilly v. Cisneros*, 835 F. Supp. 96, 99 (W.D.N.Y. 1993), *aff'd*, 44 F.3d 140 (2d Cir. 1995).  While an employer typically has the burden to establish that a plaintiff failed to mitigate by showing that suitable work existed and the employee did not make reasonable efforts to maintain it, "[a]n employer . . . is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment."  *Greenway*, 143 F.3d at 54.

Courts in the Second Circuit preclude plaintiffs from seeking back pay or front pay damages where the plaintiff did not make reasonable efforts to obtain suitable employment.  *See, e.g.*, *Cardwell*, 2023 WL 2049800, at *38 (granting summary judgment on back pay and front pay claims where plaintiff "made no reasonable efforts to seek any comparable, suitable work");

27

*Richardson v. Nat'l Basketball Ass'n*, No. 23-cv-6926, 2025 WL 240202614, at *15 (S.D.N.Y. Aug. 18, 2025) (same); *Mihalik*, 2015 WL 13699239, at *1, 3-4 (granting summary judgment motion as to back and front pay damages where the plaintiff did not contact any potential employers, apply for any jobs, or go on any interviews, and finding that the plaintiff contacting a recruiting firm, reviewing classified ads, and making a handful of calls to former colleagues did not constitute "a genuine effort to seek" employment).

Plaintiff voluntarily resigned on June 8, 2018. (SF ¶ 70.) Rather than meaningfully attempt to find employment as a journalist after her resignation, Plaintiff traveled to India for nearly a month to work on her novel (SF ¶¶ 80, 87), and then accepted a series of unpaid academic research positions (SF ¶¶ 81-87).

It is undisputed that Plaintiff did not begin seeking paid employment for almost a year after her resignation on June 8, 2018 (SF ¶ 70), until she applied on March 5, 2019 for a Deputy Editor job at WeWork. (SF ¶ 88.) She then waited another year-and-a-half before submitting two other job applications for positions at the Los Angeles Times on September 1, 2020 and October 26, 2020 (SF ¶¶ 89-90.) It was only in March 2021 that Plaintiff began submitting applications and seeking paid work on a consistent basis. (SF ¶¶ 91-96.) She then secured paid, full-time employment in October 2021, when she received an offer for a position as an Assistant Op-Ed Editor at the Los Angeles Times, which she did not begin until December 2021—about two-and-a-half years after she left BLP. (SF ¶¶ 97-99.)

On these undisputed facts, as in *Cardwell*, *Richardson*, and *Mihalik*, summary judgment should be granted for BLP as to Plaintiff's claim for back and front pay damages.

## CONCLUSION

For the foregoing reasons, BLP's motion for summary judgment should be granted and Plaintiff's Complaint dismissed in its entirety with prejudice.

Dated: April 3, 2026
New York, New York

PROSKAUER ROSE LLP


*/s/ Elise M. Bloom*
Elise M. Bloom
Michelle A. Annese
Matthew S. Rosenthal
Eleven Times Square
New York, New York 10036
Tel. 212.969.3000
ebloom@proskauer.com
mannese@proskauer.com
msrosenthal@proskauer.com

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
Tel. 617.526.9850
mbatten@proskauer.com

*Attorneys for Defendant*
*Bloomberg L.P.*