**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| NAFEESA SYEED, | : | |
| | : | |
| | : | Case No. 24-cv-6101 (GHW) (GWG) |
| Plaintiff, | : | |
| | : | **ECF CASE** |
| v. | : | |
| | : | |
| BLOOMBERG L.P., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT BLOOMBERG L.P.'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...........................................................................................1

I.    The Undisputed Evidence Firmly Establishes That Plaintiff Was Not Denied a U.N. Reporter Role Because of Her Race or Sex, and Therefore, Her NYSHRL Claim Fails as a Matter of Law. ..........................................................3

    A.    Plaintiff's Prima Facie Case Fails Because the Undisputed Evidence Shows That the U.N. Reporter Position Was Eliminated............................3

    B.    The Undisputed Facts Establish That the Reasons For Eliminating the U.N. Reporter Position and Transferring Wainer to New York Were Legitimate and Non-Discriminatory. ............................................................7

    C.    Plaintiff's Alleged Evidence of Discrimination Is Insufficient to Establish an Inference of Discrimination and/or Pretext. ...........................9

        1.    BLP's Reasons For Its Decisions Have Remained Consistent. .....10

        2.    Plaintiff's Contention That Others Were Involved In the Decision to Eliminate the U.N. Reporter Position and Transfer Wainer to New York Is False. ........................................11

        3.    Wainer's Sex and Race Alone Do Not Create an Inference of Discrimination.................................................................15

        4.    Emails Circulated Following Plaintiff's Resignation Do Not Establish Discriminatory Intent. ......................................16

        5.    The Alleged Composition Of Plaintiff's Team Is Immaterial........18

        6.    The 2016 Foreign Policy Position In Washington D.C. Is Irrelevant to Plaintiff's Failure-To-Promote Claims......................19

        7.    Alleged Comments About Other Asian-American and Female Reporters Are Irrelevant...............................................20

        8.    Alleged Comments About Microaggressions or Unconscious Bias Training Are Immaterial.........................................21

II.    Plaintiff's NYCHRL Failure-To Promote Claim Independently Fails. .................22

III.    Plaintiff's Voluntary Resignation and Failure to Mitigate Bars Post-Resignation Back Pay and Front Pay Damages. ...................................................25

    A.    The Constructive Discharge Rule Bars Post-Resignation Back Pay and Front Pay Damages. ...........................................................25

    B.    The Two Very Limited Exceptions to the Constructive Discharge Rule Do Not Apply Here. ...................................................................25

    C.    Plaintiff's Undisputed Failure to Seek Comparable Employment Independently Precludes Post-Resignation Damages...............................27

CONCLUSION.............................................................................................................30

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Alonzo v. Chase Manhattan Bank, N.A.*,
 70 F. Supp. 2d 395 (S.D.N.Y. 1999)........................................................................29

*Amna v. N.Y. State Dep't of Health*,
 No. 08-cv-2806, 2011 WL 4592787 (E.D.N.Y. Sept. 30, 2011) ...............................21

*Anderson v. New York City Health & Hospitals Corp.*,
 No. 16-cv-1051, 2020 WL 2866960 (S.D.N.Y. Mar. 2, 2020)........................ *passim*

*Azkour v. Little Rest Twelve*,
 No. 10-cv-4132, 2014 WL 12779560 (S.D.N.Y. Mar. 26, 2014)..............................25

*Bansal v. City of N.Y.*,
 No. 18-cv-878, 2020 WL 13659112 (E.D.N.Y. Feb. 24, 2020) ...............................16

*Bart v. Golub Corp.*,
 96 F.4th 566 (2d Cir. 2024) .....................................................................................14

*Brady v. Wal-Mart Stores, Inc.*,
 No. 03-cv-3843, 2005 WL 1521407 (E.D.N.Y. June 21, 2005)...............................25

*Brusso v. Imbeault*,
 699 F. Supp. 2d 567 (W.D.N.Y. 2010)....................................................................12

*Campbell v. All. Nat'l Inc.*,
 107 F. Supp. 2d 234 (S.D.N.Y. 2000).......................................................13, 21, 22

*Carden v. Westinghouse Elec. Corp.*,
 850 F.2d 996 (3d Cir. 1988).....................................................................................29

*Clark v. Marsh*,
 665 F.2d 1168 (D.C. Cir. 1981)...............................................................................25

*Di Salvo v. Chamber of Commerce of Greater Kansas City*,
 568 F.2d 593 (8th Cir. 1978) ...................................................................................25

*Diagne v. N.Y. Life Ins. Co.*,
 No. 09-cv-5157, 2010 WL 5625829 (S.D.N.Y. Dec. 8, 2010)................................22

*Dymskaya v. Orem's Diner of Wilton, Inc.*,
 No. 12-cv-00388, 2015 WL 1038394 (D. Conn. Mar. 10, 2015)............................25

*E.E.O.C. v. Bloomberg L.P.*,
   29 F. Supp. 3d 334 (S.D.N.Y. 2014)................................................................26, 27

*Est. of Hamilton v. City of N.Y.*,
   627 F.3d 50 (2d Cir. 2010)...............................................................................17

*Ferrando-Dehtiar v. Anesthesia Group of Albany, P.C.*,
   727 F. Supp. 3d 165 (N.D.N.Y. 2024)..............................................................14

*Garrison v. American Sugar Refining, Inc.*,
   789 F. Supp. 3d 291 (S.D.N.Y. 2025)..........................................................6, 7, 28

*Gates v. City of N.Y.*,
   No. 20-cv-3186, 2021 WL 3774189 (S.D.N.Y. Aug. 25, 2021)...............................13

*Gehlaut v. N.Y.C. Dep't of Educ.*,
   No. 22-cv-7862, 2024 WL 456822 (E.D.N.Y. Feb. 6, 2024) ..................................13

*Graham v. N.Y.C. Dep't of Educ.*,
   No. 21-cv-6885, 2025 WL 872221 (E.D.N.Y. Mar. 20, 2025)................................20

*Greenway v. Buffalo Hilton Hotel*,
   143 F.3d 47 (2d Cir. 1998)...........................................................................29, 30

*Grimes-Jenkins v. Consolidated Edison Co. of New York, Inc.*,
   No. 16-cv-4897, 2021 WL 1226658 (S.D.N.Y. Mar. 31, 2021)...............................24

*Hansard v. Pepsi-Cola Metro. Bottling Co.*,
   865 F.2d 1461 (5th Cir. 1989) ........................................................................29

*Hare v. Potter*,
   220 F. App'x 120 (3d Cir. 2007) .....................................................................25

*Harrison v. U.S. Postal Serv.*,
   No. 06-cv-13131, 2010 WL 3291804 (S.D.N.Y. Aug. 10, 2010)............................25

*Hawkins v. 1115 Legal Service Care*,
   163 F.3d 684 (2d Cir. 1998)...........................................................................28

*Hertzberg v. SRAM Corp.*,
   261 F.3d 651 (7th Cir. 2001) ..........................................................................25

*Hoag v. Fallsburg Central School District*,
   279 F. Supp. 3d 465 (S.D.N.Y. 2017)................................................................6

*Holcomb v. Iona College*,
   521 F.3d 130 (2d Cir. 2008)...........................................................................14

iii

*Iacovacci v. Brevet Holdings, LLC*,
   No. 18-cv-08048, 2023 WL 2631966 (S.D.N.Y. Mar. 24, 2023)..............................................6

*Jain v. Tokio Marine Management Inc.*,
   No. 16-cv-8104, 2018 WL 4636842 (S.D.N.Y. Sept. 27, 2018) ............................................14

*Jurgens v. E.E.O.C.*,
   903 F.2d 386 (5th Cir. 1990) ...............................................................................................25

*Lebada v. N.Y.C. Dep't of Educ.*,
   No. 14-cv-758, 2016 WL 626059 (S.D.N.Y. Feb. 8, 2016) ...................................................13

*Maney v. Brinkley Mun. Waterworks & Sewer Dep't*,
   802 F.2d 1073 (8th Cir. 1986) .............................................................................................25

*Marciniak v. Mass. Inst. of Tech.*,
   No. 23-cv-10305, 2024 WL 4350872 (S.D.N.Y. Sept. 29, 2024) ...........................................6

*Marcus v. Leviton Mfg. Co., Inc.*,
   661 F. App'x 29 (2d Cir. 2016) .....................................................................................15, 18

*Mazzuocola v. Thunderbird Prods. Corp.*,
   No. 90-cv-0405, 1995 WL 311397 (E.D.N.Y. May 16, 1995).................................................29

*Meyer v. McDonald*,
   241 F. Supp. 3d 379 (E.D.N.Y. 2017) ..................................................................................15

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
   No. 16-cv-4897, 2021 WL 1226658 (S.D.N.Y. Mar. 31, 2021)............................................24

*Muller v. U.S. Steel Corp.*,
   509 F.2d 923 (10th Cir. 1975) .............................................................................................25

*Murtha v. N.Y. State Gaming Comm'n*,
   No. 17-cv-10040, 2022 WL 784756 (S.D.N.Y. Mar. 15, 2022)..................................... *passim*

*Nobler v. Beth Israel Med. Ctr.*,
   715 F. Supp. 570 (S.D.N.Y. 1989)..................................................................................26, 27

*Olaechea v. City of N.Y.*,
   No. 17-cv-4797, 2022 WL 3211424 (S.D.N.Y. Aug. 9, 2022)..............................................25

*Patel v. City of N.Y.*,
   No. 12-cv-6312, 2016 WL 6820943 (S.D.N.Y. Sept. 29, 2016) .............................................8

*Sangster v. United Air Lines, Inc.*,
   438 F. Supp. 1221 (N.D. Cal. 1977) ....................................................................................25

iv

*Smalls v. N.Y. Hosp. Med. Ctr. of Queens*,
No. 13-cv-1257, 2015 WL 5437575 (E.D.N.Y. Sept. 15, 2015) ..............................................25

*Smith v. Great Am. Rests., Inc.*,
969 F.2d 430 (7th Cir. 1992) ....................................................................................................29

*Todaro v. Siegel Fenchel & Peddy, P.C.*,
No. 04-cv-2939, 2008 WL 11446818 (E.D.N.Y. Aug. 11, 2008) ..........................................25

*Townsend v. Exch. Ins. Co.*,
196 F. Supp. 2d 300 (W.D.N.Y. 2002) ..............................................................................26, 27

*Tse v. UBS Fin. Serv., Inc.*,
568 F. Supp. 2d 274 (S.D.N.Y. 2008)................................................................................26, 27

*Tulino v. Ali*,
No. 15-cv-7106, 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019) .............................................26

*Tuszynski v. Innovative Servs., Inc.*,
No. 01-cv-6302, 2005 WL 221234 (W.D.N.Y. Jan. 29, 2005)...............................................28

*Tyson-Phipps v. Blinken*,
No. 23-cv-2316, 2024 WL 4128445 (S.D.N.Y. Sept. 10, 2024) ............................................21

*Walsh v. Scarsdale Union Free School District*,
No. 16-cv-3558, 2019 WL 6789581 (S.D.N.Y. Dec. 12, 2019)...........................................30

*U.S. v. City of N.Y.*,
No. 07-cv-2067, 2015 WL 7421994 (E.D.N.Y. Aug. 7, 2015) ..............................................26

*Wayne v. Principi*,
No. 01-cv-941, 2004 WL 389009 (S.D.N.Y. Mar. 3, 2004)...................................................13

**OTHER AUTHORITIES**

Fed. R. Evid. 407 ......................................................................................................................17

## PRELIMINARY STATEMENT[1]

Plaintiff's failure-to-promote claims are extremely narrow: they arise entirely from the alleged denial of a single job—the purported U.N. Reporter position in New York City—and arise only under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). The undisputed material facts—which Plaintiff has failed to dispute with any competent evidence—make clear that Plaintiff's claims cannot withstand summary judgment.

Plaintiff cannot establish a *prima facie* case of discrimination. The undisputed evidence shows that Bloomberg L.P. ("BLP") eliminated the dedicated U.N. Reporter role in 2018 because the U.N. no longer regularly generated finance-related news that resonated with BLP's core readers. That decision was made solely by Wes Kosova, then-Senior Executive Editor, who created a fundamentally different position—a New York-based reporter covering foreign policy, U.S. and international stories, and, as needed, the U.N.

The undisputed evidence further shows that Plaintiff cannot raise an inference of discrimination. Kosova alone decided to transfer David Wainer, another BLP reporter, from Israel to this new position, and Plaintiff offers no competent evidence to dispute this. The undisputed evidence also is that Kosova was unaware of Plaintiff's interest, and Plaintiff admits she never spoke to him about the role.

The undisputed evidence further establishes that BLP's reasons for eliminating the U.N. Reporter position and transferring Wainer to New York were legitimate and non-discriminatory, and Plaintiff cannot show pretext. Plaintiff does not dispute Wainer's qualifications or Kosova's

---

[1] Unless otherwise defined herein, all capitalized and abbreviated terms have the same meanings as in BLP's Memorandum of Law In Support of Its Motion for Summary Judgment. (*See* Dkt. 80, "MSJ.")

stated reasons—she simply believes she was more qualified. But under both the NYSHRL and the NYCHRL's "less well" standard, Plaintiff's subjective belief that she was more qualified is legally insufficient to defeat summary judgment. Nor is there any evidence of discriminatory intent sufficient to establish an inference of discrimination or pretext.

Even if Plaintiff's failure-to-promote claims survive summary judgment (which they should not), summary judgment should be granted as to Plaintiff's back pay and front pay claims, precluding her from recovering any post-resignation lost wages. It is undisputed that Plaintiff voluntarily resigned and is not bringing a constructive discharge claim. A plurality of circuit courts have held that a resignation bars recovery of back pay or front pay in the absence of a constructive discharge claim. That result should follow in this case. While there are limited exceptions to that rule, neither applies here.

Plaintiff's failure to mitigate is independently fatal to her back and front pay claims. It is undisputed that after resigning, Plaintiff made no effort to seek comparable employment as a journalist for several years, instead choosing to travel to India, hold unpaid academic fellowships, and write a novel. While Plaintiff now claims her novel-writing constituted self-employment, she never identified it as such during discovery, including in sworn interrogatories asking her to identify all post-BLP work.

Accordingly, for these reasons and those set forth in BLP's opening brief, the Court should grant summary judgment in favor of BLP as to Plaintiff's failure-to-promote and back and front pay claims, and dismiss the Complaint, in its entirety and with prejudice.

I.    **The Undisputed Evidence Firmly Establishes That Plaintiff Was Not Denied a U.N. Reporter Role Because of Her Race or Sex, and Therefore, Her NYSHRL Claim Fails <u>as a Matter of Law.</u>**

    A.    *Plaintiff's Prima Facie Case Fails Because the Undisputed Evidence Shows That the U.N. Reporter Position Was Eliminated.*

The undisputed record evidence establishes that the U.N. Reporter position was eliminated, and Plaintiff offers no competent evidence to the contrary. Indeed, Plaintiff does not dispute with any competent evidence that:

- Kosova made the decision to eliminate the dedicated U.N. Reporter position, which was held by Kambiz Foroohar prior to its elimination. (Def. Reply SF ¶ 44).

- In connection with Foroohar's departure in January 2018, Kosova evaluated BLP's editorial needs and determined that there was no longer a need for a full-time U.N. reporter since the U.N. no longer regularly generated stories impacting the financial markets that resonated with BLP readers. (Def. Reply SF ¶¶ 38-39).

- Kosova determined that there was a significant need for a reporter in New York focused on foreign policy with the ability to cover both domestic and international developments from a global perspective. (Def. Reply SF ¶ 40).

- Reporting on the U.N. would be only a small component of the reporter's job, day-to-day coverage of the U.N. activities would not be this reporter's task, and the U.N. would only serve as a "listening post" for the reporter to identify and inform foreign policy and national security news outside of the U.N. (Def. Reply SF ¶¶ 41-42).

Plaintiff attempts to dispute these uncontroverted facts by disingenuously suggesting that Kosova's declaration is a "sham" and an attempt to change the record with a new declaration (Opp. at 21) and argues that the U.N. Reporter position was "tweaked," rather than eliminated, on four grounds: (i) the U.N. would continue to be used as a "listening post"; (ii) the headcount associated with Foroohar was used to transfer Wainer to New York; (iii) Wainer's subsequent receipt of an award for U.N. reporting; and (iv) Plaintiff was not told that the position had been eliminated.  (*See* Dkt. 111, Plaintiff's Opposition Brief ("Opp.") at 14-16.)  Each of these arguments is unavailing.

With respect to Kosova's declaration, Plaintiff conveniently ignores that she never deposed Kosova, and thus, his declaration does not—and cannot—contradict any of his own prior testimony, because no such testimony exists.  Nor does his declaration contradict any other testimony in this case.  While Plaintiff claims that "multiple employees" weighed in on the decision to transfer Wainer to New York (*id.*), the undisputed evidence is that Kosova made that decision. (*See* Def. Reply SF ¶¶ 55-56.)

Plaintiff's suggestion that the U.N. Reporter position was tweaked, rather than eliminated, is unsupported.  Kosova's statement that the U.N. would function as a "listening post" does not indicate that the U.N. Reporter position was tweaked or expanded.  (Def. Reply SF ¶ 42.)  To the contrary, Kosova was explicit—both in his March 2018 email to Reto Gregori, then-Deputy Editor-in-Chief, and in his sworn declaration—that while Wainer would use the U.N. as a "listening post," he "wo[uld]n't be a U.N. Reporter."  (Def. Reply SF ¶¶ 42, 51.)  As Kosova explained:

> [while] [r]eporting on the U.N. itself would be one component of this reporter's job when significant news of interest to [the Bloomberg] audience arose there . . . day-to-day coverage of U.N. activities would not be this reporter's task.  Instead, the U.N. would primarily serve as a 'listening post' for the reporter to identify and inform foreign policy and national security news outside of the U.N.

(Def. Reply SF ¶¶ 41-42.)

4

Kosova's March 27, 2018 email to Gregori left no room for doubt: "David Wainer will move to New York as a foreign policy reporter covering U.S.-international stories, which has been a problem for us and is a great need.  He'll use the UN as a listening post but *he won't be a UN reporter*."  (Kosova Decl., Ex. A (emphasis added); Def. Reply SF ¶ 51.)

Thus, the fact that certain U.N.-related responsibilities were incorporated into a fundamentally different, broader foreign policy role does not mean that the standalone dedicated U.N. Reporter position continued to exist.  Plaintiff's unsupported assertion that the position was merely "tweaked" cannot create a genuine dispute in the face of Kosova's sworn, uncontradicted declaration that he eliminated the role outright.  *See Murtha v. N.Y. State Gaming Comm'n*, No. 17-cv-10040, 2022 WL 784756, at *6 (S.D.N.Y. Mar. 15, 2022) ("The nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." (internal quotation marks omitted)).

Plaintiff's "headcount" argument is also unpersuasive.  (Opp. at 14, 16.)  Kosova's statement that Wainer would "take Kambiz's head" while BLP would "hire to replace [Wainer] in Tel Aviv or Jerusalem" does not show that the dedicated U.N. Reporter role survived.  (Def. Reply SF ¶ 51.)  The "headcount neutral" language simply reflects resource management—nothing more—and shows only that BLP reallocated an existing budget line to staff a different, broader position and backfilled Wainer's former role abroad.  Plaintiff cites no authority for the proposition that using the same headcount for a different role with different responsibilities negates elimination of the prior position.

5

Equally unavailing is Plaintiff's argument that Wainer later won an award for U.N. reporting.[2]  (Opp. at 15 (citing Dkt. 104 ¶ 66).)  That award did not transform him into a "U.N. Reporter."  The undisputed evidence is that covering the U.N. was merely one aspect of his new role.  (*See* Def. Reply SF ¶ 41.)

Lastly, simply because Plaintiff was not told that the U.N. Reporter position was eliminated does not mean that Kosova did not, in fact, eliminate the position.  (*See* Opp. at 11.)  The undisputed material facts plainly establish otherwise.  (*See* Def. Reply SF ¶¶ 38-44.)

Plaintiff's reliance on *Hoag v. Fallsburg Central School District*, 279 F. Supp. 3d 465, 477 (S.D.N.Y. 2017) in support of her argument that the U.N. Reporter position was not eliminated is misplaced.  Plaintiff reads *Hoag* to require that responsibilities be "fully distributed" or "completely eliminated" before a position counts as "eliminated" as a matter of law.  (Opp. at 15.)  *Hoag* imposed no rule requiring "complete" elimination or full distribution of responsibilities to constitute a job elimination—in fact, the case never even addressed distribution of responsibilities.  Rather, in *Hoag*, a ninth-grade teacher retired and "his position was subsequently eliminated."  *Id*. at 471.  Because the position was undisputedly eliminated and "there was no position to be filled," the court held that school district's alleged failure to promote the plaintiff was not an adverse employment action.  *Id*. at 477.

Plaintiff's effort to distinguish *Garrison v. American Sugar Refining, Inc.*, 789 F. Supp. 3d 291 (S.D.N.Y. 2025) and *Anderson v. New York City Health & Hospitals Corp.*, No. 16-cv-1051, 2020 WL 2866960 (S.D.N.Y. Mar. 2, 2020) also fails.  (*See* Opp. at 15.)  Plaintiff contends that

---

[2] Plaintiff's reliance on Wainer's LinkedIn profile for the fact that Wainer won this award is improper because that document was not produced in discovery.  *See Iacovacci v. Brevet Holdings, LLC*, No. 18-cv-08048, 2023 WL 2631966, at *5 (S.D.N.Y. Mar. 24, 2023) (disregarding on summary judgment document not produced in discovery).  The Court also may not take judicial notice of Wainer's LinkedIn profile.  *See Marciniak v. Mass. Inst. of Tech.*, No. 23-cv-10305, 2024 WL 4350872, at *11 n.5 (S.D.N.Y. Sept. 29, 2024) ("a LinkedIn page is not the sort of document for which it is appropriate to take judicial notice").

those cases are inapposite because the eliminated positions' duties were distributed among existing, lower-level employees, whereas here, Wainer was a "one-to-one replacement" for Foroohar. (*Id*.) But neither decision turned on how the former duties were redistributed. The dispositive point in both cases was that the employer never reopened or sought to fill the eliminated position, and so "never passed over plaintiff for a position that it <u>then attempted to fill</u> with other, equally qualified candidates." *Garrison*, 789 F. Supp. 3d at 308 (emphasis in original); *see also Anderson*, 2020 WL 2866960, at *14 (noting that defendant did "not seek candidates to fill the position" and delegated the eliminated position's responsibilities to existing supervisors). That is exactly what occurred here: BLP never posted, filled, or sought applicants for a dedicated U.N. Reporter position after Foroohar's departure. (*See* Def. Reply SF ¶ 44.) The fact that some U.N.-related duties were reassigned to Wainer when he transferred to New York, rather than parceled out among existing staff, does not mean that Wainer directly replaced Foroohar as the dedicated U.N. Reporter.

Ultimately, because the facts concerning Kosova's decision stand undisputed, Plaintiff fails to raise a triable issue as to whether the U.N. Reporter position was eliminated. It was. Her *prima facie* case thus fails and that ends her claims.[3]

> **B.      *The Undisputed Facts Establish That the Reasons For Eliminating the U.N. Reporter Position and Transferring Wainer to New York Were Legitimate and Non-Discriminatory.***

The undisputed evidence confirms that BLP's reasons for eliminating the U.N. Reporter position and transferring Wainer to New York were legitimate and non-discriminatory.

---

[3] Even if the U.N. Reporter position was not eliminated, Plaintiff's argument that she informally applied for the position in New York to which Wainer was transferred is meritless and her *prima facie* case necessarily fails. (*See* Opp. at 12-14.) Plaintiff admits that she never discussed her purported interest in the U.N. Reporter role with Kosova, the sole decision-maker. (Bloom Supp. Decl., Ex. D, Syeed Tr. at 140:10-141:12.) Plaintiff's alleged discussions with other managers about her interest in foreign policy generally, a foreign policy position in D.C. in 2016, and Foroohar's former position are, therefore, irrelevant. Accordingly, Plaintiff's *prima facie* case fails for this reason as well.

Plaintiff offers no competent evidence disputing any of the reasons for the elimination of the U.N. Reporter position.  (Def. Reply SF ¶¶ 38-49.)  Plaintiff likewise offers no competent evidence disputing that Kosova identified a clear editorial need for a New York-based foreign policy reporter with a global perspective (Def. Reply SF ¶ 40), or that he valued Wainer for his reporting ability and speed in breaking news—skills critical to the role (Def. Reply SF ¶¶ 48-49). Nor does Plaintiff dispute that Wainer was qualified for the New York position and had a longer tenure at BLP.  (Def. Reply SF ¶ 46, 49.)

Plaintiff's subjective belief that her master's degree and journalism experience made her more qualified than Wainer creates no triable issue of fact. (*See* Opp. at 4, 17.)  An employee's subjective view that her qualifications were superior is legally insufficient to create an issue of fact to defeat summary judgment.  *See Anderson*, 2020 WL 2866960, at *13 ("A plaintiff's subjective assessment of his qualifications is insufficient to create a genuine issue of fact as to whether an employer's proffered reason for selecting the successful candidate was pretext for discrimination").  The question is whether the employee's credentials were "so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [the plaintiff] for the job in question." *Patel v. City of N.Y.*, No. 12-cv-6312, 2016 WL 6820943, at *6-7 (S.D.N.Y. Sept. 29, 2016).

Plaintiff cannot clear that bar.  There is no dispute that Wainer had been a BLP reporter since 2009—five years longer than Plaintiff—and Kosova specifically valued his ability to "break news at a fast pace and quickly write breaking news stories"—areas where it is undisputed that Plaintiff struggled.  (Def. Reply SF ¶¶ 43, 46; *see also* Def. Reply SF ¶¶ 9, 15, 17, 29.)  No reasonable employer would be barred from selecting a reporter known for speed and productivity for a role demanding those skills.  That is editorial judgment—not discrimination.

8

**C.**     ***Plaintiff's Alleged Evidence of Discrimination Is Insufficient to Establish an Inference of Discrimination and/or Pretext.***

Plaintiff has failed to establish any inference of discrimination or demonstrate that BLP's stated reasons for its decision were pretextual. The undisputed evidence shows that: (i) Kosova eliminated the U.N. Reporter position because the U.N. no longer regularly generated finance-related stories relevant to BLP's core readership, not because of Plaintiff or any other individual (Def. Reply SF ¶ 38); (ii) Plaintiff's race and sex played no role in the decision not to select her for the New York position to which Wainer was transferred (Def. Reply SF ¶¶ 38-49); (iii) the timing of the decision belies any inference of discrimination, as discussions regarding eliminating the U.N. Reporter position and transferring Wainer began in January 2018 and continued through March 2018—*before* Plaintiff ever expressed interest in the role (Def. Reply SF ¶¶ 35-37, 50-54); (iv) the record contains no statements by Kosova—the sole decisionmaker—reflecting racial or gender bias; and (v) throughout Plaintiff's employment, BLP supported her career development by approving her participation in a journalism fellowship, encouraging her to reconsider her resignation, and offering to help her secure a position in New York (Def. Reply SF ¶¶ 22, 67, 74).[4]

Faced with this uncontroverted evidence, Plaintiff attempts to defeat summary judgment by cobbling together a purported "mosaic" of circumstantial allegations consisting of alleged

---

[4] Plaintiff attempts to flip this evidence of support on its head, arguing that manager support "does not negate any possible discrimination" and characterizing BLP's conduct as a "glass ceiling" that kept her in a particular role while refusing to promote her. (Opp. at 26.) This argument fails. The "glass ceiling" theory presupposes that Plaintiff was blocked from advancement because of her race or sex. But Plaintiff points to no evidence that Kosova—the sole decisionmaker—considered her race or sex, or that anyone prevented her from being promoted for discriminatory reasons. To the contrary, the undisputed evidence shows BLP invested in Plaintiff's career: her managers approved her participation in a Columbia journalism fellowship, supported her attendance at the prestigious Aspen Security Forum, gave her consistent pay raises, and—when she announced her resignation—encouraged her to stay and offered to help her find a position in New York. (Def. Reply SF ¶¶ 18, 20-22, 31-33, 67, 73-74.) That is not a glass ceiling—it is the opposite. Plaintiff cites no case holding that genuine managerial support for an employee's career development is evidence of discrimination. Her conclusory invocation of the "glass ceiling" label cannot manufacture a triable issue where none exists.

9

conduct by non-decisionmakers—including Bill Faries (Senior Editor), Michael Shepard (Managing Editor), Craig Gordon (Executive Editor and Bureau Chief), and others—that is entirely unrelated to Kosova's decision. (*See* Opp. at 23-28.) As set forth in detail below, none of these allegations, whether considered individually or collectively—gives rise to a reasonable inference of discrimination or pretext or creates a triable issue as to whether Kosova, the sole decisionmaker, acted with discriminatory intent.

    1. <u>BLP's Reasons For Its Decisions Have Remained Consistent</u>.

  Plaintiff's unsupported claim that BLP's reasons for eliminating the U.N. Reporter position and transferring Wainer to New York are "shifting and inconsistent" mischaracterizes the record and does not create a triable issue. (Opp. at 20.)  BLP has consistently maintained in its statement of facts and opening brief that: (i) the dedicated U.N. Reporter position was eliminated; (ii) a broader foreign policy role was created; and (iii) Wainer was selected for it based on his qualifications, BLP's editorial needs, and the desire to retain a talented reporter.  These are complementary facts describing one coherent decision—not shifting stories.

  Nor can Plaintiff create a factual dispute by pointing to Faries's or Shepard's alleged failure to tell her, after the fact, that the U.N. Reporter position had been eliminated.  (*See* Opp. at 16.) Neither Faries nor Shepard was involved in the decision, and what either allegedly did or did not say to Plaintiff cannot change what Kosova decided or what the contemporaneous documents show: Wainer would be a foreign policy reporter who would "use the UN as a listening post" but "[would not] be a UN reporter."  (Def. Reply SF ¶ 51.)  At most, those alleged conversations bear on what Faries or Shepard communicated to Plaintiff after the decision—not whether Kosova eliminated the dedicated U.N. Reporter role or why he did so.

2.  Plaintiff's Contention That Others Were Involved In the Decision to Eliminate
the U.N. Reporter Position and Transfer Wainer to New York Is False.

Recognizing that her failure to promote claim depends on showing that Kosova, the sole decisionmaker, acted with discriminatory intent, Plaintiff attempts to recast the record by asserting that "multiple employees"—specifically, Gregori, Senior Editor Rosalind Mathieson, Gordon, Faries, and Shepard—participated in the decision at issue.  (Opp. at 21 n.3.)  The undisputed evidence, however, establishes otherwise.

In her opposition, Plaintiff mischaracterizes emails in which Kosova asked, "if ok with you" and "Cool with you?," claiming that they were sent to "other editors discussing the U.N. role."  They were not.  The emails were sent only to Kosova's superior Gregori—not to Shepard, Gordon, or Faries, the individuals Plaintiff accuses of discriminatory conduct.  The fact that Gregori approved Kosova's decision does not undermine that Kosova was the sole decisionmaker.  In any event, Gregori's involvement is immaterial: Plaintiff did not testify that she ever discussed the U.N. Reporter position with Gregori and, more significantly, identifies no evidence that Gregori engaged in any discriminatory conduct toward her whatsoever.

Plaintiff's reliance on Mathieson's January 2018 email is also misplaced.  (Opp. at 4; *see* Def. Resp. to Plaintiff's SOAF ¶ 50.)  In that email, Mathieson asked ***Faries***—not Kosova, the decisionmaker—whether there was a "question over the future of [Foroohar] and/or the UN role." (Def. Reply SF ¶ 35.)  But  Faries was not involved in the decision (Def. Reply SF ¶ 55), and Mathieson's question does not make her a decisionmaker.  Nor is there any evidence that Mathieson discussed Wainer's transfer to New York with Kosova or engaged in any  discriminatory conduct toward Plaintiff.

Plaintiff also relies on Shepard's alleged use of the word "we" during a conversation with her after the decision to transfer Wainer to New York had already been made, arguing that it shows

11

others participated in the decision.  (Opp. at 22.)  An ambiguous pronoun used by a non-decisionmaker in a *post hoc* conversation does not show that Shepard, Faries, or Gordon participated in Kosova's decision.  The undisputed evidence establishes that Shepard, Faries, and Gordon did not participate in the relevant decision, and learned about the decision to transfer Wainer to New York only after Kosova had made the decision.  (Def. Reply SF ¶ 55; Supp. Bloom Decl. Ex. A, Faries Tr. 225:23-227:12.)   Plaintiff's inferential leap from a single word, uncorroborated by any evidence other than her own recounting of the conversation, cannot defeat summary judgment.  *See Murtha*, 2022 WL 784756, at *6 ("speculative" testimony "without evidentiary support . . . cannot be relied upon" in opposition to a summary judgment motion); *Brusso v. Imbeault*, 699 F. Supp. 2d 567, 583 (W.D.N.Y. 2010) ("a plaintiff's deposition testimony alone is insufficient to defeat a motion for summary judgment").

Moreover, there is no evidence in the record that Gordon or Faries discriminated against Plaintiff.  Plaintiff therefore leans heavily on Shepard's alleged remark that BLP "wanted to make the New York job a diversity slot, but it didn't really work out that way."  (Opp. at 24.)  Even assuming Shephard made the statement, it is immaterial because the undisputed evidence establishes that he played no role in the decision to transfer Wainer to New York.  (Def. Reply SF ¶ 55; Supp. Bloom Decl. Ex. B, Shepard Tr. at 134:9-135:2, 143:6-148:21.)  His testimony was unequivocal: "I did not participate in crafting this role for [Wainer], and as a result, didn't look at [Plaintiff] for this particular job."  (*Id*., Ex. D at 148:18-21.)  As such, even under Plaintiff's "meaningful role" theory (Opp. at 22), she identifies no evidence that Shepard recommended Wainer, provided information to Kosova, participated in defining the role, or otherwise caused the decision.  Shepard therefore could not have "infected" Kosova's decision when he did not participate in making it at all.  (*Id*.)

12

It is axiomatic that a stray remark by a non-decisionmaker cannot establish that Kosova—the actual decisionmaker—harbored discriminatory animus for purposes of defeating summary judgment. *See, e.g.*, *Lebada v. N.Y.C. Dep't of Educ.*, No. 14-cv-758, 2016 WL 626059, at *18 (S.D.N.Y. Feb. 8, 2016) (Gorenstein, J.) ("stray remarks" by plaintiff's supervisor made outside the decision-making process failed to show discriminatory intent); *Wayne v. Principi*, No. 01-cv-941, 2004 WL 389009, at *11 (S.D.N.Y. Mar. 3, 2004) (Gorenstein, J.) (holding that plaintiff was not "terminated or otherwise subjected to discrimination because of her age" despite age-related comments by non-decisionmaker); *Gates v. City of N.Y.*, No. 20-cv-3186, 2021 WL 3774189, at *6 (S.D.N.Y. Aug. 25, 2021) (single remark insufficient where not made in the decision-making context); *Campbell v. All. Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (stray remark by non-decisionmaker "insufficient to establish racial animus and defeat a motion for summary judgment"); *Gehlaut v. N.Y.C. Dep't of Educ.*, No. 22-cv-7862, 2024 WL 456822, at *5 (E.D.N.Y. Feb. 6, 2024) ("courts in the Second Circuit routinely dismiss discrimination claims where the only allegations made in support are stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim"), *aff'd*, No. 24-1741-cv, 2025 WL 2586770 (2d Cir. Sept. 8, 2025).[5]

---

[5] Plaintiff's other alleged statements by Faries and Shepard are of no consequence. Plaintiff claims that when she asked Faries why she was not considered for the U.N. role, he told her she "should have expressed interest and advocated for herself" and referenced editor Sara Forden as an example. (Pl. SOAMF ¶ 67.) Plaintiff similarly claims Shepard referenced Forden and told Plaintiff she could learn from Forden on how to advance, which allegedly "signal[ed]" that "women . . . have to justify their promotion and hiring . . . as opposed to being considered for roles." (Pl. SOAMF ¶ 70.) But Plaintiff's citation to her own testimony does not support this proposition. Rather, it reflects only Plaintiff's subjective interpretation: "So that *to me* indicated the sexist practices of promotion within Bloomberg, because *to me* that indicated that women, females, have to justify their promotion and hiring." (Supp. Bloom Decl., Ex. D, Syeed Tr. at 160:5-12 (emphasis added); *see also* Def. Resp. to Pl. SOAMF ¶¶ 67, 70.) Moreover, even crediting Plaintiff's account, these statements are irrelevant to her failure-to-promote claim because neither Faries nor Shepard was the decisionmaker—Kosova was. (*See* Def. Reply SF ¶¶ 55-56.) Their *post hoc* comments about self-advocacy do not contradict the contemporaneous documentary evidence establishing that the U.N. Reporter position was eliminated.

*Jain v. Tokio Marine Management Inc.*, No. 16-cv-8104, 2018 WL 4636842 (S.D.N.Y. Sept. 27, 2018) is inapposite. (Opp. at 24.) There, the *decisionmaker* allegedly told the plaintiff (an Indian man) that he was not "the right cultural fit"—during the very meeting in which the plaintiff learned he would not be promoted. *Id*. at *3. No such facts exist here. Similarly, Plaintiff overstates the relevancy of *Ferrando-Dehtiar v. Anesthesia Group of Albany, P.C.*, 727 F. Supp. 3d 165, 183 (N.D.N.Y. 2024). (Opp. at 25.) Far from being "consistent" with the facts of this case (*id*.), in *Ferrando-Dehtiar*, the court found evidence of a *decisionmaker* (a member of the all-male board of directors) saying that the board did not "want females at the table." 727 F. Supp. 3d at 175. By contrast, there is no evidence here that Kosova—the decisionmaker—considered Plaintiff's race or gender in eliminating the U.N. Reporter role or transferring Wainer to New York.

Accordingly, while Plaintiff argues that her claim can proceed if "an individual shown to have the impermissible bias played a meaningful role" in the decision at issue (Opp. at 22), as illustrated above, she points to no credible evidence to establish that anyone but Kosova decided to eliminate the dedicated U.N. Reporter position and transfer Wainer to New York. She points to no evidence that anyone recommended Wainer, provided information to Kosova, participated in defining the role, or otherwise caused the decision. None of the individuals identified by Plaintiff could have "infected" Kosova's decision when they did not participate in making it at all.

Her reliance on *Holcomb v. Iona College* and *Bart v. Golub Corp.* is misplaced and does not establish otherwise. In *Holcomb*, the court concluded that there was "ample evidence" from which a jury could conclude that other individuals played a "meaningful role" in the plaintiff's termination based on direct evidence that those individuals influenced or participated in the termination decision. 521 F.3d 130, 143 (2d Cir. 2008). Similarly, in *Bart*, the court found evidence that the individual "most involved" in the plaintiff's termination "harbored gender-based

14

bias against her." 96 F.4th 566, 577 (2d Cir. 2024). Here, however, the undisputed evidence is that none of the individuals whom Plaintiff points to played a "meaningful role" in Kosova's decision and there is no evidence that Kosova was influenced by anyone else's purported bias.

        3.   Wainer's Sex and Race Alone Do Not Create an Inference of Discrimination.

Plaintiff's assertion that discrimination can be inferred simply because Wainer is a white male misstates the law. (*See* Opp. at 18-19.) *Cf. Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) ("Without more, the mere fact that [a member of a protected class] was replaced by a [person outside the protected class] does not plausibly indicate discriminatory motive."); *see also Meyer v. McDonald*, 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017) (holding that defendant's decision to "fill[] the position with two individuals outside of plaintiff's protected class [was] itself insufficient" to defeat summary judgment), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018). Although selecting someone outside a protected class may, in some circumstances, help satisfy a *prima facie* case, it does not defeat summary judgment where, as here, the record shows a legitimate, non-discriminatory reason for the decision and no evidence that protected status played any role. Plaintiff offers nothing connecting Wainer's race or sex to Kosova's decision. Treating Wainer's identity alone as enough to defeat summary judgment would make every cross-protected-class personnel decision automatically suspect. That—as *Marcus* and *Meyer*, *supra*, make clear—is not the law.

Plaintiff attempts to overcome this by speculatively suggesting that Wainer received more favorable treatment (Opp. at 19), but has no competent evidence to support her suggestion. For example, she contends that "Defendant" singled Wainer out for "UN reporter work because he wanted to work in the United States," but "ignored her repeated requests to work on foreign policy stories and to be considered for the same position." (Opp. at 19.) Plaintiff ignores, however, that it is undisputed that Kosova was aware that Wainer was interested in relocating to the United States

(Def. Reply SF ¶ 47);[6] on the other hand, there is no evidence that Plaintiff ever discussed her interest in foreign policy with Kosova and it is undisputed that she never spoke with Kosova about her interest in the U.N. Reporter position. (Def. Reply SF ¶ 61.)

Equally unavailing is Plaintiff's contention that the difference in her salary in 2018 versus Wainer's salary when he transferred to New York establishes an inference of discrimination. Plaintiff points only to the fact that their salaries were different. There is no evidence in the record—and Plaintiff cites to none—as to who made those salary decisions, when the decisions were made, and the factors that played a role in salary setting. Her claim that the differences are discriminatory is pure, unsupported speculation. *Bansal v. City of N.Y.*, No. 18-cv-878, 2020 WL 13659112, at *11 (E.D.N.Y. Feb. 24, 2020) ("plaintiffs' assertions that an inference of discrimination exists merely because of a salary difference and their protected class is insufficient"). Moreover, Wainer's salary is irrelevant to Plaintiff's failure-to-promote claim as Plaintiff points to absolutely no evidence tying it to the decision to transfer him to New York—the actual issue in this case.

### 4. Emails Circulated Following Plaintiff's Resignation Do Not Establish Discriminatory Intent.

Plaintiff's reliance on emails between Tamika Alexander (Human Resources Business Partner) and BLP leadership following Plaintiff's resignation does not create any inference of discrimination, nor does it establish pretext. Plaintiff highlights Alexander's email to Gregori stating, "Sadly, there is some truth to her comments." (Opp. at 25.) But Plaintiff omits the critical context. When asked what she found truthful, Alexander testified: "What I did conclude was that

---

[6] Significantly, when Plaintiff expressed interest in transferring from Dubai to the United States to be closer to her husband's job location, BLP worked with Plaintiff to effectuate that transfer, just as it did with Wainer in 2018. (*See* Bloom Supp. Decl., Ex. D, Syeed Tr. at 12:24-13:11.)

16

there was difficulty in her managers finding a defined role for her, so that was true. And I did verify that they did request her to submit a memo to, you know, for her to define what her aspirations were. The other points, I don't recall if we specifically verified that." (Supp. Bloom Decl. Ex. C, Alexander Tr. at 84:5-16.) Alexander did not corroborate Plaintiff's discrimination allegations. What Alexander did confirm was that Plaintiff's managers had struggled to find the right role for her—a career-development issue, not discrimination.[7] (*See also*, Def. Resp. to Pl. SOAMF ¶¶ 71-79, 81- 122.)

Alexander's deposition testimony confirms that understanding. She repeatedly testified that she "did not deem" Plaintiff's concerns to be "a complaint of discrimination," but rather "frustration with career opportunities." (*Id*., Ex. C, Alexander Tr. at 246:15-21.) And when asked whether she believed there was truth to discrimination allegations based on conversations with managers, Alexander clarified that "[t]he comments about [Plaintiff's] job and the career opportunities" were what she found truthful—not allegations of race or sex discrimination.[8] (*Id*., Ex. C, Alexander Tr. at 214:2-6.) Plaintiff cannot manufacture a triable issue by substituting her own self-serving interpretation of these emails for Alexander's sworn testimony about what she actually meant. *See Murtha*, 2022 WL 784756, at *3 n.5 (a plaintiff's "self-serving testimony . . . cannot defeat a summary judgment motion").

---

[7] In any event, Alexander's impressions are immaterial: she played no role in the decision to transfer Wainer, and her post-resignation views about Plaintiff's managers—none of whom made or participated in that decision—shed no light on whether Kosova, the sole decisionmaker, acted with discriminatory intent.

[8] Plaintiff relies on the fact that, after her resignation, Alexander recommended microaggression training for the D.C. bureau as evidence that BLP "knew there was a problem of discrimination." (Opp. at 25.) Alexander's recommendation of training, however, cannot suffice as evidence of discriminatory conduct. *See* Fed. R. Evid. 407 (barring as evidence of liability, including "culpable conduct," subsequent remedial measures); *see also Est. of Hamilton v. City of N.Y.*, 627 F.3d 50, 53 (2d Cir. 2010) (district court "correctly excluded" changes to employer's promotion process because the evidence "plainly runs afoul of Rule 407").

17

5.    The Alleged Composition Of Plaintiff's Team Is Immaterial.

In a futile attempt to create a disputed issue and withstand summary judgment, Plaintiff alleges that her team "was composed entirely of white men who received their preferred beats and positions." (Opp. at 24.)

The fact that Plaintiff's colleagues were white men does not, without more, give rise to an inference of discrimination.  *See Marcus*, 661 F. App'x at 33 ("Without more, the mere fact that [a member of a protected class] was replaced by a [person outside the protected class] does not plausibly indicate discriminatory motive.").  Plaintiff points to no discriminatory statements, conduct, or other evidence suggesting that the composition of her team was the product of intentional discrimination—let alone that it had any connection to Kosova's decision to eliminate the U.N. Reporter position and transfer Wainer to New York.  Absent such evidence, Plaintiff's observation about workplace demographics is legally insufficient to establish an inference of discrimination or pretext.

Nor does the record support Plaintiff's assertion that the men on her team "received their preferred beats and positions." (Opp. at 24.)  Plaintiff's SOAMF ¶ 29 is unsupported by the record evidence.  The Faries testimony Plaintiff cites identifies the beats of other reporters on the team: Nick Wadhams covered foreign policy, Chris Strohm covered the Justice Department, and Tony Capaccio covered the Pentagon.  (*See* Def. Resp. to Pl. SOAMF ¶ 29.)  Faries never testified that these men received "preferred topics" or "preferential treatment." (*Id*.)  Plaintiff's contentions are based only on her own self-serving testimony reflecting her subjective beliefs about how she was

18

treated relative to her colleagues—not objective evidence of preferential treatment. Self-serving testimony cannot defeat summary judgment. *See Murtha*, 2022 WL 784756, at *3.[9]

    6.    The 2016 Foreign Policy Position In Washington D.C. Is Irrelevant to Plaintiff's <u>Failure-To-Promote Claims</u>.

Plaintiff argues that the decision to hire Nick Wadhams—rather than her—into a foreign policy reporter role in D.C. in 2016 is relevant to her failure-to-promote claims. (Opp. at 24.) It is not. As an initial matter, any such claim is time-barred, subject to District of Columbia—not New York—law, and is not part of this lawsuit. More fundamentally, a prior employment decision made by different decision-makers, for a different position, in a different city, two years before the decision at issue, cannot establish discriminatory intent or pretext for Kosova's 2018 decision.

Plaintiff asserts only that she was allegedly a leading candidate for the 2016 position and that she had more relevant experience and academic qualifications than Wadhams, who was selected for the position and is a white male. (*See* Def. Resp. to Pl. SOAMF ¶¶ 23-25.) But the record shows that Wadhams relocated from a Bureau Chief position in Beijing—a more senior role than Plaintiff held. (*Id*.) Plaintiff offers no facts regarding who made the 2016 decision or why it was made. Her contention that race or gender influenced that decision is nothing more than speculation. Critically, Plaintiff does not allege that Kosova was involved in the 2016 decision, nor is there any evidence that the individuals who made the 2016 decision were involved in Kosova's 2018 decision to eliminate the U.N. Reporter position and transfer Wainer to New York. The 2016 decision is therefore doubly irrelevant to Plaintiff's claims.

---

[9] Plaintiff's claim that male reporters received secure communication tools is unavailing, as Plaintiff admits that the two reporters were not on her team and there is no evidence that her gender played a role in any decisions related thereto. (*See* Def. Resp. to Pl. SOAMF ¶¶ 30-31.)

7. Alleged Comments About Other Asian-American and Female Reporters Are Irrelevant.

Plaintiff points to alleged comments about three other Asian-American and female reporters— ███████████████████████████████████ —as purported evidence of discriminatory animus.  (*See* Pl. SOAMF ¶¶ 47-49.)  None of these allegations creates a triable issue of fact.

First, the alleged comments are criticisms of professional work product—not evidence of race or sex discrimination.  Plaintiff claims that Larry Liebert, an editor on the National Security team, commented that ██████████████████████████.”  (Def. Resp. to Pl. SOAMF ¶ 47.) Plaintiff claims she overheard two unidentified White House reporters call ████████████ ██████████████████████████.”  (Def. Resp. to Pl. SOAMF ¶ 48.)  Plaintiff also claims she heard editors say that ██████████████████████████.” (Def. Resp. to Pl. SOAMF ¶ 49.)  These are non-discriminatory criticisms of reporters' work— writing ability, professional seriousness, and story length.  They are not "racist" or "sexist" merely because the subjects are women or of Asian descent.  *See Graham v. N.Y.C. Dep't of Educ.*, No. 21-cv-6885, 2025 WL 872221, at *7 (E.D.N.Y. Mar. 20, 2025) ("facially neutral[] remarks do not raise an inference of discrimination unless accompanied by specific evidence of discriminatory intent").

Second, Plaintiff has not established that any of the individuals who allegedly made these comments had any connection to Plaintiff or were involved in Kosova's decision to eliminate the U.N. Reporter position and transfer Wainer to New York.  (*See* Def. Resp. to Pl. SOAMF ¶¶ 47-49.)  Indeed, as to the Mohsin comments, Plaintiff cannot even identify who made the alleged statements—she testified only that she overheard "two White House reporters" whose names she did not provide.  (Supp. Bloom Decl., Ex. D, Syeed Tr. at 203:11-23.)  Stray remarks by non-

20

decisionmakers—particularly unidentified ones—cannot establish that Kosova (or any other individual) harbored discriminatory animus. *See Campbell*, 107 F. Supp. 2d at 247 (stray remark by non-decisionmaker "insufficient to establish racial animus and defeat a motion for summary judgment").

Third, none of these comments were directed at Plaintiff or relate to any adverse employment action against her (*See* Def. Resp. to Pl. SOAMF ¶¶ 47-49), and thus, do not create a triable issue sufficient to defeat summary judgment. *See Tyson-Phipps v. Blinken*, No. 23-cv-2316, 2024 WL 4128445, at *6 (S.D.N.Y. Sept. 10, 2024) (Gorenstein, J.) (collecting cases holding that stray remarks unrelated to the decision-making process are insufficient to demonstrate discriminatory animus), *adopted by*, 2024 WL 4444281 (S.D.N.Y. Oct. 8, 2024); *Amna v. N.Y. State Dep't of Health*, No. 08-cv-2806, 2011 WL 4592787, at *8 (E.D.N.Y. Sept. 30, 2011) ("'stray remarks' and minor occurrences unrelated to the adverse employment action generally do not raise an inference of discrimination"), *aff'd sub nom. Amna v. N.Y. Dep't of Health*, 505 F. App'x 44 (2d Cir. 2012).

8. Alleged Comments About Microaggressions or Unconscious Bias Training Are <u>Immaterial</u>.

Plaintiff also points to alleged comments regarding microaggressions and anti-bias training as evidence of alleged discriminatory animus. (*See* Pl. SOAMF ¶¶ 88-89.) These allegations are immaterial and do not create a triable issue for several reasons.

First, Plaintiff's allegations mischaracterize the record. In her exit survey, Plaintiff stated that she heard "multiple comments that mocked anti-bias training, including slights on 'microaggressions.'" (Def. Resp. to Pl. SOAMF ¶ 88.) Yet her deposition testimony identifies only two discrete incidents: (1) a single comment by Shepard, who allegedly said "Oh, that's a microaggression; ha-ha" while talking to Faries, who responded "you'll learn about it in training";

21

and (2) a separate incident in which ▮▮▮▮▮▮▮▮—not Shepard—allegedly complained about the unconscious bias training while Faries "egged him on." (Supp. Bloom Decl., Ex. D, Syeed Tr. at 113:19-115:9.) Paragraph 89 of Plaintiff's SOAMF conflates these two incidents and attributes both to Shepard, which the cited testimony does not support. (*See* Def. Resp. to Pl. SOAMF ¶ 89.)

Second, even crediting Plaintiff's account, these alleged comments are immaterial because none of the individuals who allegedly made them were involved in Kosova's decision to eliminate the U.N. Reporter position and transfer Wainer to New York. (*See* Def. Reply SF ¶¶ 55-56.) Notably absent from these allegations is any suggestion that Kosova—the sole decision-maker— ever made such comments, participated in them, or was even aware of them. Stray remarks by non-decisionmakers cannot establish that Kosova harbored discriminatory animus. *See Campbell*, 107 F. Supp. 2d at 247.

## II.    Plaintiff's NYCHRL Failure-To Promote Claim Independently Fails.

Plaintiff's NYCHRL claim fails even when analyzed separately and independently under the statute's broader standard. BLP does not dispute that the NYCHRL must be construed liberally or that a plaintiff may proceed under a mixed-motive theory. But the NYCHRL "does not alter 'the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment,'" and Plaintiff still must adduce evidence from which a reasonable jury could find that she was treated less well at least in part because of her race or sex. *Diagne v. N.Y. Life Ins. Co.*, No. 09-cv-5157, 2010 WL 5625829, at *8 n.1 (S.D.N.Y. Dec. 8, 2010) (Gorenstein, J.), *adopted by*, 2011 WL 204905 (S.D.N.Y. Jan. 21, 2011), *aff'd*, 472 F. App'x 56 (2d Cir. 2012). She has not done so.

The undisputed evidence forecloses NYCHRL liability for the same core reason it forecloses Plaintiff's NYSHRL claim: the dedicated U.N. Reporter position was eliminated, and Kosova—not Faries, Shepard, or Gordon—made the relevant editorial decision for non-

discriminatory reasons. Plaintiff identifies no evidence that Kosova harbored bias against her or considered her race or sex when making the decision. The NYCHRL's liberal construction does not permit a jury to infer discriminatory motive from speculation, from a non-decisionmaker's alleged post hoc remark, or from background allegations disconnected from the challenged decision.

Nor can Plaintiff satisfy the NYCHRL standard by repackaging the same insufficient evidence as a "less well" claim. Wainer's race and sex, standing alone, do not show that Plaintiff was treated less well because of her protected characteristics; otherwise, every employment decision favoring someone outside a plaintiff's protected class would automatically reach a jury. Plaintiff's comparator evidence—that Wainer received a higher salary and target bonus and was "groom[ed]" for the role—does not move the needle either. (Opp. at 5, 14.) Those facts reflect Wainer's seniority (he had been at BLP five years longer than Plaintiff), his recognized "high-potential" status, and BLP's editorial judgment; they do not show that any difference in treatment was because of Plaintiff's race or sex, as even the NYCHRL requires. (Def. Reply SF ¶¶ 37, 46, 48.)

Likewise, the undisputed evidence firmly establishes Wainer's qualifications. (Def. Reply SF ¶¶ 37, 46, 48-49.) Plaintiff's subjective view that she was more qualified than Wainer does not create a triable issue where Kosova selected Wainer based on editorial needs, plus Wainer's talent, speed, and productivity. (Def. Reply SF ¶¶ 48-49); *see also Anderson*, 2020 WL 2866960, at *13 ("A plaintiff's subjective assessment of his qualifications is insufficient to create a genuine issue of fact as to whether an employer's proffered reason for selecting the successful candidate was pretext for discrimination."). At most, Plaintiff challenges BLP's editorial judgment, but the NYCHRL does not convert a disagreement over business judgment into evidence of discriminatory

23

motive.  *See id.* ("[I]t is not the Court's role to second-guess an employer's business decisions, even if they are unwise or premised on a mistaken assessment of the job candidates' relative qualifications").

Plaintiff's reliance on *Mihalik v. Credit Agricole Cheuvreux North America, Inc.* and *Grimes-Jenkins v. Consolidated Edison Co. of New York, Inc.* underscores the absence of comparable evidence here.  (Opp. at 28-29.)  In *Mihalik*, the plaintiff adduced evidence that her supervisor and CEO repeatedly made sexually charged comments, exposed her to pornography and a "boys' club" environment, twice propositioned her for sex, and then excluded, berated, and fired her after she rejected his advances.  715 F.3d 102, 105-07, 114 (2d Cir. 2013).  In *Grimes-Jenkins*, the plaintiff offered evidence that supervisors and coworkers made sexual comments about her body, invoked gendered stereotypes about family and children, and enforced a dress code prohibiting dresses, open-toed shoes, and other "girly stuff."  No. 16-cv-4897, 2021 WL 1226658, at *8 (S.D.N.Y. Mar. 31, 2021).  Those cases involved direct unwanted gender-based conduct that a jury could find altered the plaintiffs' terms and conditions of employment because of gender.  This case does not.  Plaintiff identifies no evidence that Kosova—the decisionmaker—made any race- or sex-based remark, knew of or participated in the alleged background conduct, or selected Wainer based on protected characteristics.  At most, Plaintiff relies on an alleged post hoc "diversity slot" remark by Shepard, a non-decisionmaker who did not participate in Kosova's decision.  The NYCHRL is broad, but it is not a general civility code.  *See Anderson*, 2020 WL 2866960, at *31.  Plaintiff still must show that she was treated less well at least in part because of race or sex.  *Mihalik* and *Grimes-Jenkins* do not permit a jury to infer discriminatory motive from unrelated background allegations disconnected from the challenged decision.

24

**III.    Plaintiff's Voluntary Resignation and Failure to Mitigate Bars Post-Resignation Back Pay and Front Pay Damages.**

    **A.    The Constructive Discharge Rule Bars Post-Resignation Back Pay and Front Pay Damages.**

The constructive discharge rule mandates that a plaintiff who voluntarily resigns cannot recover economic damages from the date of resignation absent a showing of constructive discharge. There is no claim in this case of constructive discharge. (Opp. at 30.) Accordingly, this Court should apply the constructive discharge rule—which a plurality of circuit courts,[10] as well as several courts within the Second Circuit,[11] have adopted or applied—and bar Plaintiff's recovery of post-resignation back pay and front pay damages.[12]

    **B.    The Two Very Limited Exceptions to the Constructive Discharge Rule Do Not Apply Here.**

There are two limited exceptions to the constructive discharge rule: post-resignation back pay and front pay are recoverable only when the plaintiff (1) was denied a "unique" position or (2) "faced a permanent obstacle to career advancement" such that remaining with the employer would

---

[10] Six of the seven circuits to have considered the constructive discharge rule have adopted it. *See Hare v. Potter*, 220 F. App'x 120, 135 n.9 (3d Cir. 2007); *Jurgens v. E.E.O.C.*, 903 F.2d 386, 389 (5th Cir. 1990); *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001); *Maney v. Brinkley Mun. Waterworks & Sewer Dep't,* 802 F.2d 1073, 1075 (8th Cir. 1986); *Muller v. U.S. Steel Corp.*, 509 F.2d 923, 930 (10th Cir. 1975); *Clark v. Marsh*, 665 F.2d 1168, 1172 (D.C. Cir. 1981).

[11] *See Olaechea v. City of N.Y.*, No. 17-cv-4797, 2022 WL 3211424, at *9 n.5 (S.D.N.Y. Aug. 9, 2022); *Smalls v. N.Y. Hosp. Med. Ctr. of Queens*, No. 13-cv-1257, 2015 WL 5437575, at *8 n.15 (E.D.N.Y. Sept. 15, 2015); *Azkour v. Little Rest Twelve*, No. 10-cv-4132, 2014 WL 12779560, at *2-3 (S.D.N.Y. Mar. 26, 2014); *Harrison v. U.S. Postal Serv.*, No. 06-cv-13131, 2010 WL 3291804, at *9 n.9 (S.D.N.Y. Aug. 10, 2010), *aff'd*, 450 F. App'x 38 (2d Cir. 2011); *Todaro v. Siegel Fenchel & Peddy, P.C.*, No. 04-cv-2939, 2008 WL 11446818, at *6 (E.D.N.Y. Aug. 11, 2008); *Brady v. Wal-Mart Stores, Inc.*, No. 03-cv-3843, 2005 WL 1521407, at *5-6 (E.D.N.Y. June 21, 2005); *Dymskaya v. Orem's Diner of Wilton, Inc.*, No. 12-cv-00388, 2015 WL 1038394, at *9-10 (D. Conn. Mar. 10, 2015).

[12] In her opposition brief, Plaintiff disputes the number of circuits that have adopted the constructive discharge rule. (*See* Opp. at 30 n.4.) Plaintiff is wrong that the Eighth and Ninth Circuits have rejected the rule. The Ninth Circuit has not explicitly addressed the issue. *Sangster v. United Air Lines, Inc.*, 438 F. Supp. 1221 (N.D. Cal. 1977) does not even mention the words "constructive discharge." Nor does *Di Salvo v. Chamber of Commerce of Greater Kansas City*, 568 F.2d 593 (8th Cir. 1978). Even assuming that Plaintiff were correct about the Eighth and Ninth Circuits, which she is not, there still is no dispute that a majority of circuit courts that have addressed the issue have adopted the constructive discharge rule.

have been futile.  *See E.E.O.C. v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 341-45 (S.D.N.Y. 2014).[13] Plaintiff satisfies neither exception.

Plaintiff does not contend that the U.N. Reporter position was "unique" in any way and offers no evidenced to establish that it was, nor does she rebut BLP's arguments explaining why it was not, as it was one of many reporter jobs focusing on foreign policy.  (*See* MSJ at 24-25.)

Nor did Plaintiff face a "permanent obstacle to career advancement" at BLP.  The uncontroverted evidence is that Plaintiff was offered valuable opportunities, including attendance at the prestigious Aspen Security Forum and participation in a Columbia journalism fellowship (Def. Reply SF ¶¶ 18, 20-22) and received consistent pay raises throughout her tenure (Def. Reply SF ¶¶ 31-33).  *See Bloomberg L.P.*, 29 F. Supp. 3d at 344 (plaintiff's "steady compensation increases" were "inconsistent with her claim that she had no future at Bloomberg").  Moreover, when she announced her resignation, it is undisputed that Plaintiff's managers encouraged her to stay:  Shepard told her he "would move heaven and earth to help her get a job in New York" (Def. Reply SF ¶ 67); Gordon was actively working to find Plaintiff an opportunity in New York (Def. Reply SF ¶ 73); and Kosova personally called to urge her to reconsider (Def. Reply SF ¶ 74).

Nor does the alleged reputational effect of filing this lawsuit entitle Plaintiff to recover lost wages.  (*See* Opp. at 34.)  Plaintiff offers no evidence of reputational harm, so this theory cannot preserve post-resignation back pay or front pay.  *See U.S. v. City of N.Y.*, No. 07-cv-2067, 2015 WL 7421994, at *8 (E.D.N.Y. Aug. 7, 2015) (denying damages for lost future earning capacity

---

[13] *See also Tulino v. Ali*, No. 15-cv-7106, 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019), *aff'd sub nom. Tulino v. City of N.Y.*, 813 F. App'x 725 (2d Cir. 2020); *Tse v. UBS Fin. Serv., Inc.*, 568 F. Supp. 2d 274 (S.D.N.Y. 2008); *Nobler v. Beth Israel Med. Ctr.*, 715 F. Supp. 570 (S.D.N.Y. 1989); *Townsend v. Exch. Ins. Co.*, 196 F. Supp. 2d 300 (W.D.N.Y. 2002).

based on reputational harm where claimant provided no documents or facts in support of such claim).

Plaintiff accuses BLP of "read[ing] the [constructive discharge] cases far too narrowly," but her own description of the cases proves that BLP's reading is correct. (Opp. at 32-33.)  By Plaintiff's own account, the cases recognize just two limited exceptions to the constructive discharge rule: the plaintiff must have been denied a unique position or faced a permanent obstacle to career advancement.  (*See id.*)  Plaintiff concedes that *Nobler* "involve[d] a unique position,"[14] (*id.* at 32), and that both *Nobler* and *Townsend* permit post-resignation damages only where "recognized opportunities for career advancement [were] closed off by reason of [the employer's] discrimination."  (*Id.* (quoting *Townsend*, 196 F. Supp. 2d at 309).)  Both cases prove the point.  In *Nobler*, a single director position existed, so the plaintiff "had no hope of ameliorating his situation with his employer"—a complete dead end.  715 F. Supp. at 573-74.  And in *Townsend*, the employer reduced three team leader positions to two and demoted the plaintiff, thereby closing off his path to advancement.  196 F. Supp. 2d at 309-10.  *Tse* and *Bloomberg L.P.* only underscore the limits of these exceptions: each recognized the exceptions to the rule yet refused post-resignation damages because the plaintiff could not satisfy them.  *See Tse*, 568 F. Supp. 2d at 300-04; *Bloomberg L.P.*, 29 F. Supp. 3d at 341-45.  As explained above, Plaintiff meets neither exception.

### C.    Plaintiff's Undisputed Failure to Seek Comparable Employment Independently Precludes Post-Resignation Damages.

Plaintiff's failure to seek comparable employment independently bars her post-resignation back pay and front pay claims.  A plaintiff must use "reasonable diligence" to find suitable

---

[14] Plaintiff did not need to concede that *Townsend* involved a unique position, because there, the court expressly held that the positions at issue were unique.  196 F. Supp. 2d at 310.

employment.  The dispositive point is not the number of applications Plaintiff submitted,[15] but her

professional choices: after resigning in June 2018, she traveled to India, accepted unpaid academic

positions, and devoted herself to writing a novel rather than pursuing paid journalism.  (Def. Reply

SF ¶¶ 80-81, 83, 85.)  A years-long course of unpaid fellowships and novel-writing is not

reasonable mitigation.  Plaintiff cannot shift the economic consequences of voluntarily leaving the

paid labor force onto BLP by relabeling unpaid academic work, novel writing, and freelance

projects[16] as "self-employment."  (Opp. at 36.)  *See Tuszynski v. Innovative Servs., Inc.*, No. 01-

cv-6302, 2005 WL 221234, at *6 (W.D.N.Y. Jan. 29, 2005) (cutting off back pay after plaintiff

chose lower-paying self-employment without seeking other suitable, higher-paying work).

  *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684 (2d Cir. 1998) does not salvage

Plaintiff's lost wage claims.  *Hawkins* holds that self-employment constitutes proper mitigation

only "if it is undertaken in good faith and is a reasonable alternative to seeking other comparable

employment."  *Id.* at 696.  There, the plaintiff "made appropriate efforts to earn money as a self-

employed lawyer."  *Id.*  Writing fiction for years while earning nothing is not a reasonable

---

[15] Plaintiff's reference to "35 different employers" does not create a triable issue. (Opp. at 35 n.7.)  Listing employer names is not the same as showing reasonable diligence, and Plaintiff admits she lacks documentation of the dates or details of every application (*see id.*), so her undated, generalized list does not establish when she applied, what positions she sought, whether they were comparable paid journalism roles, or whether the applications reflected reasonable diligence.  The contemporaneous record remains that Plaintiff waited nearly one year before her first documented application for paid work, submitted only two more over the next year-and-a-half, and did not apply for jobs with any regularity until March 2021.  Nor is Plaintiff aided by her contention that her lack of documentation between her mid-2018 departure from BLP and her mid-2020 filing "is not surprising" because she "did not think about filing suit until 2020." (*Id.* at 36 n.7.)

[16] Plaintiff's vague reference to "freelance assignments" does not establish self-employment sufficient to satisfy her duty to mitigate.  (Opp. at 35.) Plaintiff testified that she did not become a "freelance editor" until June 2020—two years after leaving BLP.  (Bloom Supp. Decl., Ex. D, Syeed Tr. at 176:13-16.)  She further testified that she performed no freelance work during her fellowship at the Institute for Advanced Study from September 2019 through June 2020.  (*Id.* at 177:15-19.)  And when she purportedly did begin freelancing, the work consisted only of sporadic assignments over a five-month period, some of which she performed for free.  (*Id.* at 178:17-25.)  Plaintiff's subsequent declaration asserting that she was "self-employed as a freelance editor" from September 2020 through December 2021 directly contradicts her deposition testimony and cannot create a genuine dispute of fact.  (Dkt. 107, Syeed Decl. ¶ 14.)  *See Garrison*, 789 F. Supp. 3d at 314 (disregarding affidavit because it was contradicted by plaintiff's prior testimony).

alternative to seeking journalism roles.  The cases *Hawkins* cites involved plaintiffs who started businesses to generate actual earnings.  *See Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 438 (7th Cir. 1992); *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005 (3d Cir. 1988).  Unpaid, hobby-like pursuits that generate no income and bear no connection to Plaintiff's field cannot satisfy the duty to mitigate.  *Cf. Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir. 1989) (part-time flea-market venture did not constitute self-employment sufficient to satisfy plaintiff's duty to mitigate).

Alonzo v. Chase Manhattan Bank, N.A., 70 F. Supp. 2d 395 (S.D.N.Y. 1999) is equally unavailing.  The *Alonzo* plaintiff remained in the labor market—she sent resumes, contacted employment agencies, and obtained interviews.  *See id*. at 399.  The court held only that those limited efforts were not the complete inactivity addressed in *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53-54 (2d Cir. 1998).  Plaintiff's record is markedly different: after resigning, she traveled to India, pursued unpaid academic posts, and focused on her novel rather than comparable journalism employment.  (Def. Reply SF ¶¶ 80-87.)  BLP's argument is not merely that Plaintiff's job search was sparse; it is that her course of travel, unpaid fellowships, and novel-writing was not reasonable mitigation of the full-time journalism compensation she now seeks.

Plaintiff's interrogatory responses further undermine her position.  Interrogatory No. 13 asked her to identify all post-BLP employment, ***including self-employment***.  In response, Plaintiff listed only her academic research positions—not novel writing or freelance projects.  (Webber Decl. Ex. 3 at 21-22.)  If she considered those activities "self-employment," she would have disclosed them.  She cannot now manufacture a triable issue through self-serving characterizations that contradict her sworn interrogatory responses.  *See Mazzuocola v. Thunderbird Prods. Corp.*, No. 90-cv-0405, 1995 WL 311397, at *9 (E.D.N.Y. May 16, 1995) ("Factual assertions made in

an affidavit submitted in opposition to a motion for summary judgment may be disregarded if those assertions are contradicted by earlier statements in response to interrogatories.").

Finally, Plaintiff's fallback argument fails. Under *Greenway*, a failure to mitigate does not always extinguish back pay: a plaintiff may still recover where "the total compensation . . . [s]he would have received from comparable employment would have been less than what [s]he received" absent the discrimination. 143 F.3d at 54. But this principle presupposes evidence of what comparable, paid employment Plaintiff could have obtained and what it would have paid—evidence Plaintiff has not offered. Having forgone the paid labor market for travel, unpaid fellowships, and novel-writing, Plaintiff cannot manufacture a triable damages issue by gesturing at a hypothetical "alternative mitigation strategy" she never pursued or quantified. (Opp. at 36.) *Walsh v. Scarsdale Union Free School District* is not to the contrary; there, the court denied a motion *in limine* concerning whether an older, emotionally distressed plaintiff who retired had adequately mitigated. No. 16-cv-3558, 2019 WL 6789581, at *5 (S.D.N.Y. Dec. 12, 2019). *Walsh* does not support the notion that a plaintiff who abandons her profession for travel, unpaid fellowships, and fiction writing may recover full damages offset only by a theoretical mitigation strategy she never undertook.

## <u>CONCLUSION</u>

For these reasons, and for the reasons set forth in BLP's opening brief, the Court should grant BLP's motion for summary judgment.

Dated: July 2, 2026
      New York, New York                  PROSKAUER ROSE LLP


                                          */s/ Elise M. Bloom*
                                          Elise M. Bloom
                                          Michelle A. Annese
                                          Matthew S. Rosenthal

Eleven Times Square
New York, New York 10036
Tel. 212.969.3000
ebloom@proskauer.com
mannese@proskauer.com
msrosenthal@proskauer.com

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
Tel. 617.526.9850
mbatten@proskauer.com

*Attorneys for Defendant*
*Bloomberg L.P.*

31